# BEN F. BENSON v. COUNTY OF MARSHALL.[1]

May 22, 1925.

No. 24,562.

**Claimant for compensation was in employ of defendant.**
The undisputed facts show that the claimant was in the employ of the county at the time of the accident which caused the injuries for which he seeks compensation.

1. See Workmen's Compensation Acts, C. J. p. 115, § 114.

1. See notes L. R. A. 1917D, 143; L. R. A. 1918F, 190.

Upon the relation of Ben F. Benson the supreme court granted its writ of certiorari directed to the Industrial Commission to review its disallowance of compensation in a proceeding under the Workmen's Compensation Act by relator, employe, against county of Marshall, employer. Reversed.

*Halvor Steenerson* and *Theodore F. Neils,* for relator.

*W. O. Braggans,* for respondent.

TAYLOR, C.

Certiorari to review the order of the Industrial Commission disallowing the claim of Ben Benson for compensation from the county of Marshall for injuries which resulted in the amputation of his right leg below the knee.

The referee found, as a fact, that Ben Benson was not in the employ of the county at the time of the accident; and on appeal to the Industrial Commission this finding was affirmed. Whether the established facts show that this conclusion was erroneous is the question presented. It is true, as claimed by respondent, that only questions of law are reviewable here, but, whether there is any evidence tending to support a given finding, and whether the evidence conclusively establishes a particular fact, are deemed questions of law within this rule.

[1]Reported in 204 N. W. 40.

Ben Benson and his brother Edward Benson had operated as partners for some years. In the summer of 1922, they took a contract in the name of Ben from the county of Marshall to grade one of its highways. Sometimes one and sometimes the other acted as foreman on this job. The work was performed under the supervision and direction of the county highway engineer and was entirely satisfactory. In December, 1922, the county proceeded to gravel several of its highways. For the purpose of giving the work to taxpayers of the county, the county board fixed a rate "per yard. mile" for hauling gravel, and announced that any resident of the county would be permitted to haul at the rate so fixed. The board acquired gravel pits in different parts of the county from which the material was taken. They placed the county highway engineer in charge of the work and gave him authority to hire foremen and checkers. The foremen had charge of the pits. They directed the loading and with the aid of helpers did the necessary "stripping." The checkers directed where the gravel should be deposited on the highway and checked the quantity hauled by the different parties. The engineer employed Edward Benson as foreman of pit No. 3. Some 20 teams were hauling out of this pit of which 8 belonged to the Bensons. The earnings of their teams and also of the two brothers, including the wages of one as foreman, were treated as partnership property.

On December 11 Edward Benson had occasion to be away and by arrangement between them Ben took his place as foreman. On December 14 Edward again had occasion to be away and by a similar arrangement Ben again took his place as foreman. While assisting in loading a team on this day a quantity of frozen earth fell from the bank upon him causing the injuries in question. That he sustained these injuries in the manner stated and was acting as foreman at the time is conceded. That the engineer had authority to employ a foreman is also conceded. The claim is that the engineer employed Edward and not Ben, and that the county is not liable to Ben for that reason.

The engineer and Edward made the agreement and their testimony is the only evidence relating to it. Edward states that the agree-

ment was that either he or Ben could perform the duties of foreman. He says:

"I don't know as I could remember just to the word. It was something similar that I could go ahead and run it when I was there, and Benny part of the time."

The engineer states that the conversation related to both Edward and Ben, for the reason that they were working together as partners and as foremen, and he considered both of them competent and satisfactory. He says:

"I don't remember just exactly how it was; but it was to this effect, that it would be agreeable to me that whichever one was working as foreman, only that Ed. Benson would be the official foreman. * * * When I hired him as foreman I told him in this way, or something to this effect, that it would be all right to me whichever or either one of them could go in and work, only that I could hire only one man. * * * I could only hire one as official foreman, but it would be all right whichever one did the work, or if they wanted to change off at times." * * * * "I considered them both equally competent."

The two parties who made the contract, and the only witnesses who testify concerning it, agree that it was expressly understood that Ben could take Edward's place as foreman whenever they wished to change off. It is suggested that the triers of fact may not have given credit to this testimony. Although it is generally stated that the credibility of the witnesses is a matter to be determined by the triers of fact; yet the positive, uncontradicted and unimpeached testimony of credible witnesses, which is neither inherently improbable nor rendered so by the facts or circumstances disclosed, cannot be arbitrarily disregarded. Babich v. Oliver Iron Mining Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 704; Goedhard v. Folstad, 156 Minn. 453, 195 N. W. 281. We find nothing in the record tending to discredit or cast doubt upon this testimony, and its truth and correctness seem to be unquestioned.

The principal point urged is that, although the engineer had authority to employ a foreman, he could not delegate to the foreman the

power to employ a substitute. But here the engineer himself made the agreement by which Ben was to take the place of Edward and perform the duties of foreman whenever Edward wished to be relieved temporarily. We think that the action of the engineer was within the power conferred upon him, and that the undisputed and unquestioned facts show, as a matter of law, that Ben was in the employ of the county at the time of the accident, and that his injury was received while performing the duties of such employment and from a hazard incident thereto.

The order is reversed.