## IDA SUTLIEF v. NEW RICHLAND PRODUCE COMPANY AND ANOTHER.[1]

October 29, 1937.

No. 31,406.

*Moonan & Moonan,* for relator.
*C. E. Warner,* for respondents.

[1]Reported in 275 N. W. 692.

JULIUS J. OLSON, JUSTICE.

Relator brings *certiorari* to review a decision of the industrial commission denying compensation.

The matter was heard before a referee, who found that relator's husband, William H. Sutlief, was employed by respondent-employer under a Minnesota contract of hire; that while so employed on August 17, 1934, he suffered an accidental injury arising out of and in the course of his employment; that the employer and insurer had due notice of the injury within the time prescribed by law; that the employe died on September 22, 1934, "but that said death was in no way associated with the above described accidental injury." Clearly, then, the only question presented is whether there is evidence in the record to sustain the quoted finding.

Sutlief's employment was to clean chicken batteries. These were rather clumsy affairs about three feet in width, five feet or more in height, and approximately eight feet in length, and weighed in the neighborhood of 400 to 500 pounds. They were set on ball-bearing rollers and were movable by pushing or pulling. As a part of the employe's work it was necessary for him to move these batteries short distances upon a wooden floor. On August 17, while in the act of moving one of these batteries, pulling the same toward him, the employe backed into a post and his right leg was "bumped" by coming in contact with the apparatus he was pulling. He finished that day's work but stated to a fellow employe that he had been hurt on his leg. That evening upon arriving home his wife noticed that he was not his usual self; that he looked pale and that he limped. She applied a bandage upon the knee that evening, saturating it with alcohol to relieve the pain. She noticed a small red spot on the inside of the right leg at or about the knee. The employe went back to work the next day and worked until about noon, when his leg became so painful that he felt he must quit. He did so, returning to his home. His condition grew worse on the following day, Sunday, and on Monday, August 20, the doctor was called. He examined the employe's right knee and found a small red spot on the outside of the knee, but there was neither break nor abrasion of the skin. Hot dressings and the use of an

electric pad were ordered and applied. But Sutlief's condition did not improve. He rapidly grew worse. A few days after this visit a blister appeared some three or four inches below the knee. This showed signs of wet gangrene. He died September 22, 1934.

Over a period of at least two years he had been suffering with diabetes. While a man of robust strength theretofore, he had gradually been losing weight. He was not the type of man who wanted medical aid but bore his ailment without seeking such. He had continued working at his daily chore until incapacitated at the time and place mentioned.

On September 24 the attending physician duly made and filed a "CERTIFICATE OF DEATH" wherein he stated in answer to questions therein that "The PRIMARY UNDERLYING CAUSE of death was Diabetes Mellitus Duration 2 yrs." As a contributory cause of importance the doctor inserted "diabetic Gangrene Duration 1 mo." In answer to this question appearing upon the certificate: "Was disease or injury in any way related to occupation of deceased," the answer was "No." At time of trial relator introduced the testimony of two medical experts, the one who attended her husband during his illness and who made the death certificate, and another physician residing at Waseca. From the testimony of these experts it perhaps may be said that relator made a *prima facie* case. We assume that she did. For the employer and its insurer the medical expert testifying in their behalf was very definitely of opinion that there was no causal relation between the accidental injury here appearing and Sutlief's death; that trauma did not enter into the picture at all. We shall quote briefly from his testimony:

Q. "Assuming you have a case where trauma would play a part in the development of this gangrenous condition, would you notice the effects first at the point where trauma was applied or away from it?

A. "It would have to come at the point where the trauma was applied if you got a break in the skin in that area. If you get it farther away, it would mean the trauma had nothing to do

with it and that there was a break in the skin from some other cause. * * *

Q. "I believe all the lay testimony here was to the effect the trauma was on the inside of the knee, the claimed trauma, and the blister appearing on the outer aspect of the calf.

A. "Of course you cannot bring the testimony given in by the lay people today and the testimony by the physicians together. It just is impossible for the infection, if the bruise was on the inside of the leg, to have gotten on the outside of the leg without going down the leg or coming up the leg instead. It would have to go through bone and other tissues in order to get on the other side. It could have gone around the bones, of course, but it is not a logical thing, because there are tissues between the bones which should prevent infection from going from one side of the leg to the other. * * *

Q. "Assuming the place where he was hit with the battery—do I take your testimony to mean the blister could not develop three inches below?

A. "I don't think it could.

Q. "On the other hand, you say if some break in the skin occurred at the toes—

A. "It would work up through the lymphatics, but it doesn't work down through the lymphatics. The lymphatics go toward the heart.

Q. "Could it follow the arteries?

A. "Not without some infection to start with. * * *

Q. "The slightest cut in the skin in an injury would be all you need?

A. "You have to have some point of entry, and nobody here has stated this man had any break in his skin. I am talking about this man and the testimony given here today. You cannot apply all diabetics to just this one case.

Q. "Doctor, what is your theory of this thing, that it developed down in the feet?

A. "I am not giving any theory. I have my opinion. All I have to say is there had to be some break some place in the skin from the foot to the knee or even higher as it worked up for a portal of entry

to get in there. It might have been on the toes or on the foot, and one of the best places of entry is from dirty feet with most diabetics.

Q. "Wouldn't one of the common causes be tight shoes that wouldn't even cause a break?

A. "That is cutting off the blood supply. You cannot get infection that way, unless you get a place where the shoe rubs the skin and gives a portal of entry."

Causal relation between the accident and the resulting condition of Sutlief was obviously a question of fact and as such for the triers of fact. We are not permitted as a court of review to try such issues. We have frequently said: "A finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived." Jones v. Excelsior Laundry Co. 183 Minn. 531, 532, 237 N. W. 419. Our only authority is to determine "whether there is any evidence tending to support a given finding, and whether the evidence conclusively establishes a particular fact," both of which "are deemed questions of law." Benson v. County of Marshall, 163 Minn. 309, 204 N. W. 40.

We had occasion recently to pass upon a case which in principle is similar to the one here presented and where the same result obtained. See Gorman v. Grinnell Co. Inc. 200 Minn. 122, 273 N. W. 694.

Writ discharged and order affirmed.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.