863 P.2d 276

**ARIZONA DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, a division of the Arizona Industrial Commission; Darin Perkins and Marshall Krotenberg, Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Michael O. Wilkinson, a judge thereof, Respondents,**

**The CITY OF PHOENIX CIVIL SERVICE BOARD, an administrative agency of the City of Phoenix, Real Party in Interest.**

No. 1 CA-SA 93-0079.

Court of Appeals of Arizona, Division 1, Department B.

June 17, 1993.

Review Denied Dec. 15, 1993.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

558

The Indus. Com'n, Anita Valainis, Chief Counsel by Margaret A. Fraser and Laura L. McGrory, Phoenix, for petitioners.

Gammage & Burnham by Richard K. Mahrle, Phoenix, for real party in interest.

## OPINION

JACOBSON, Presiding Judge.

Petitioners Arizona Division of Occupational Safety and Health (ADOSH) and its employees Darin Perkins and Marshall Krotenberg seek review of the trial court's order enforcing subpoenas issued by the Phoenix Civil Service Board (Board), ordering Perkins and Krotenberg to appear and testify in an appeal from the City's disciplinary actions involving two employees suspended after a safety violation for which the City has been cited by ADOSH. The issue raised in this special action is whether the ADOSH employees are statutorily exempt from compulsory appearance before the Board under A.R.S. § 23–408(E).

### Special Action Jurisdiction

The City brought this action in superior court to enforce the subpoenas under authority of A.R.S. § 12–2212.[1] Such a

---

1. A.R.S. § 12–2212 provides:

   A. When a public officer is authorized by law to take evidence, he may issue subpoenas, compel attendance of witnesses and production of documentary evidence, administer oaths to witnesses, and cause depositions to be taken, in like manner as in civil actions in the superior court.

proceeding is essentially one for contempt, *see* A.R.S. § 12–2211,[2] from which an appeal cannot be taken. *See generally Riley v. Superior Court*, 124 Ariz. 498, 605 P.2d 900 (App.1979). Because petitioners have no adequate remedy by appeal, and because this is an issue of first impression and statewide importance, we accepted special action jurisdiction. *See Matera v. Superior Court*, 170 Ariz. 446, 825 P.2d 971 (App.1992).

### Facts and Procedural History

On June 25, 1992, Perkins and Krotenberg, as employees of ADOSH, visited a City of Phoenix Water Distribution construction site. They observed one City employee, Robert Hudak, operating a front-end loader with a fully loaded bucket, and another City employee, Raymond Martinez, working in a trench under the fully loaded bucket. At the time, Martinez was employed as a water service worker, and Hudak was employed as a water service crew leader. Pursuant to A.R.S. § 23–415, ADOSH issued a citation to the City as a result of this incident for a violation of 29 C.F.R. 1926.651(e).[3] The citation imposed a $400 penalty.

Based on the citation, the City issued discipline notices to Martinez and Hudak, charging them with violation of City Personnel Rules, and suspending them each for one day.[4] Both employees. appealed their suspensions; hearings were set before the Board for January 14, 1993, on the Martinez appeal and for January 27, 1993, on the Hudak appeal. At the request of the City, the Board issued subpoenas *duces tecum* to Perkins and Krotenberg, requiring them to appear with "[a]ll documents and/or files pertaining to Raymond Martinez."[5] The City also protested the ADOSH citation pursuant to A.R.S. § 23–420, and a hearing was set in that matter before the Industrial Commission for January 13, 1993. The City requested a continuance in the ADOSH case until after the Board hearings on the basis that the ADOSH hearing might influence the Board hearings. The ADOSH hearing was continued until March 23, 1993.

On January 14, 1993, ADOSH filed a Motion to Quash Subpoena Duces Tecum in the Martinez disciplinary matter on the ground that Perkins and Krotenberg, as employees of ADOSH, were not required to appear based on the authority of A.R.S. § 23–408(E), which provides that no ADOSH employee can be compelled to appear or testify "at any deposition, trial or hearing ... unless the appearance is related to a hearing held pursuant to this arti-

B. If a witness fails to appear at the time and place designated in the subpoena, or fails to answer questions relating to the matter about which the officer is authorized to take testimony, or fails to produce a document, the officer may, by affidavit setting forth the facts, apply to the superior court of the county where the hearing is held, and the court shall thereupon proceed as though such failure had occurred in an action pending before it.

**2.** A.R.S. § 12–2211(B) provides:

A witness summoned who fails to appear may be punished for contempt of court, and a warrant for the arrest of such witness may be issued to compel his attendance.

**3.** 29 C.F.R. 1026.651(e) provides that no employee is permitted underneath loads handled by lifting or digging equipment.

**4.** Both disciplinary notices charged the employees with violations of the following City Personnel Rules:

21b3—That the employee has violated any lawful or official regulation or order or failed to obey any lawful and reasonable direction given him by his superior officer, when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in lower morale in the organization, or to result in loss, inconvenience or injury to the City or the public.
21b7—That the employee through negligence or willful conduct has caused damage to public property or waste of public supplies.
21b17—That the employee has been guilty of any other conduct of equal gravity to the reasons enumerated in 21b1 through 21b16.
*See generally* Phoenix City Code, ch. 25, § 8 (Supp. Jan. 31, 1982) (authorizing the Civil Service Board to establish personnel rules).

**5.** Although this action only affects the Martinez hearing, it is clear that the City will also seek attendance of the witnesses at the Hudak hearing.

cle."[6] When Perkins and Krotenberg did not appear either in person or through Industrial Commission counsel at the Board hearing on January 14, the hearing officer recommended that the motion to quash be denied and that enforcement of the subpoenas be pursued. Based on this recommendation, the Board filed a complaint for subpoena enforcement in superior court which gives rise to this special action. The Board also filed a motion to enforce the subpoenas, alleging that because the employees had denied any misconduct and because the ADOSH inspectors were the only witnesses to the violation for which the City was cited, their presence at the Board proceedings was necessary to allow the City to effectively discipline its employees for ADOSH violations. Thus, the Board argued, the Board hearings and the ADOSH proceedings were "related" for the following reasons:

> As part of the City's defense of employee misconduct to the ADOSH citation, the City must show effective enforcement of work rules through discipline sufficient to discourage violations.... The City must take corrective disciplinary action against Martinez in order to present its defense in the upcoming ADOSH hearing. Thus, the discipline hearing is directly related to the upcoming ADOSH hearing.

In response, ADOSH filed a motion to dismiss and a motion for a protective order, contending that its "effectiveness is severely hampered if its employees are forced to testify in unrelated proceedings, rather than performing their jobs. The legislature recognized this and enacted A.R.S. § 23–408(E)." ADOSH further argued that the two proceedings were unrelated:

> In spite of the City's claim that its civil service actions are related, Title 23, Art. 10 has absolutely nothing to do with the City of Phoenix City Service Board, or personnel rules of the City of Phoenix or disciplinary actions brought by the City against its employees. The City's claim that it cannot meet the elements of the "employee misconduct defense" without

the DIVISION's investigator's testimony is not sufficient to bring its Civil Service Board or disciplinary actions within the scope of Title 23....

> \* \* \* \* \* \*

> The "hearings held pursuant to this article" [included in A.R.S. § 23–408(E)] encompass *only* those hearings envisioned by the Legislature in its enactment of Article 10. Those hearings enforce standards to ensure "safe and healthful working conditions" for every working man, woman and child in the state. They do not relate to Phoenix Civil Service Board hearings.

At a hearing on the motions, the Board again contended that the relationship between the Board hearings and the ADOSH proceedings was related based upon the "employee misconduct" defense.

On March 8, 1993, the trial court granted the Board's motion to enforce the subpoenas and ordered Perkins and Krotenberg to appear and give testimony in the civil service appeal regarding Raymond Martinez. The court reasoned as follows:

> The Court finds that the applicable statute ARS § 23–408(E) provides for testimony in the case of a "related" hearing. The Court finds that the disciplinary action against Mr. Martinez is, in fact, a related hearing to the ADOSH hearing. The Court finds that [ADOSH] is being unreasonable in refusing to allow Perkins and Krotenberg to testify. They have placed the City in a catch 22 situation. The only evidence available to prove the employee conduct violates the ADOSH statutes is the testimony of Perkins and Krotenberg, the only witnesses who observed misconduct, which is the basis of the Martinez' discipline. It is absolutely essential to the City in presenting its defense to the ADOSH citation to have the testimony of these witnesses.

On March 17, 1993, ADOSH filed its special action in this court, seeking review of that order.

---

6. "This article" refers to A.R.S. §§ 23–401 *et seq.*

## Discussion

The statutory provision at issue in this case provides:

> Except as provided in § 23–426 [allowing for protection of trade secrets], information and facts developed by the commission, the director or any employee of the commission or division in the course of inspection or investigation are public records subject to inspection pursuant to title 39, chapter 1, article 2 [A.R.S. §§ 39–121 *et seq.*] if, pursuant to § 23–415, subsection D, the inspection or investigation has been closed or a citation has been issued. Such information and facts shall not be admissible in any court or before any administrative body except pursuant to the provisions of this article. *Notwithstanding the provisions of this subsection, the director or any commission employee is not required to appear at any deposition, trial or hearing concerning a division inspection or investigation unless the appearance is related to a hearing held pursuant to this article.* Hearings held pursuant to this article are open to the public.

A.R.S. § 23–408(E) (emphasis added). Legislative history on this provision, as amended, is scarce. *See* 1986 Ariz.Sess.Laws, ch. 235, § 1; 1986 Ariz.Sess.Laws, ch. 176, § 2; House Bill 2338 and Senate Bill 1085, 37th Legis., 2d Reg.Sess.1986; House Committee on Commerce, Minutes of Meeting March 10, 1986; House Committee on Natural Resources and Energy, Minutes of Meeting April 7, 1986; Senate Committee on Natural Resources and Agriculture, Minutes of Committee March 12, 1986. However, before its most recent amendment in 1986, the statute provided:

> *Information and facts* developed by the commission, the director or any employee of the commission or division in the course of any investigation *may be used for purposes of this article only* and shall not be admissible in any court or before any administrative body except pursuant to the provisions of this article.

A.R.S. § 23–408(D), added by Laws 1972, ch. 136, § 3 (emphasis added). This former provision was interpreted by the Arizona Supreme Court as creating an evidentiary privilege that prohibited enforcement of a superior court order directing an *in camera* inspection of ADOSH investigative records. *Industrial Comm'n v. Superior Court*, 122 Ariz. 374, 595 P.2d 166 (1979). In that case, the supreme court concluded:

> While the arguments favoring disclosure are convincing, they cannot control in the instant case.... [T]he language used by the Legislature is without qualification. "Information and facts developed * * * in the course of any investigation may be used for the purposes of this article only * * * ", is plain and unambiguous. The settled rule of law is that the Legislature's intent is first to be determined from the statute's language, ... and if a statute is plain and unambiguous, there is no room for judicial construction.... Clear and unambiguous language of a statute must be given the meaning of the words the Legislature used....
>
> *We therefore hold that the information and facts developed by [ADOSH] in the course of any investigation may only be used for the purpose of carrying out the duties of the Division of Occupational Safety and Health of the Industrial Commission as provided in Art. 10 of Ch. 23.*

*Id.* at 376–77, 595 P.2d at 168–69 (citations omitted and emphasis added).

ADOSH argues that this holding is equally applicable to the current statute, so that "a hearing held pursuant to this article" means only a hearing held under authority of Article 10 of Chapter 2 of Title 23 and does not apply to an appearance at a City Civil Service Board hearing. We agree with ADOSH that the current version of A.R.S. § 23–408(E) is similarly unambiguous in its provisions requiring ADOSH employees to appear only at ADOSH-related hearings.

Additionally, ADOSH has provided us with significant policy reasons to support the legislature's unambiguous intent to preclude appearances of ADOSH employees at non-related hearings. As ADOSH

points out, even though analogous federal provisions do not provide such a clear prohibition of compulsion to appear for Department of Labor OSHA investigations, similar subpoenas have been vacated under circumstances that would put a burden on the enforcement of OSHA regulations:

> To require official investigators of the United States Department of Labor to testify under the compulsion of a subpoena in a private litigation with respect to their findings would readily interfere with the functioning of the Department of Labor and the performance of official duties by the investigators; and may have the effect of hampering necessary investigations and the effective enforcement of safety laws.
>
> The Act contemplated investigations for the public benefit and its protection— to determine the causes of accidents with a view to preventing repetitious occurrences—it was not intended to serve the interests of individual litigants....
>
> Moreover, to compel the investigator's testimony as to his findings enables a private litigant to obtain an expert opinion at public expense, which obviously was not a purpose of the Act.

*Pizzo v. National Shipping Corp.,* 1 OSHC (BNA) 1178 (S.D.N.Y.1973); *see also Pilar v. SS Hess Petrol,* 55 F.R.D. 159, 165 (D.Md.1972) (protective order issued in civil suit for damages preventing depositions for Department of Labor inspectors who investigated shipboard fire because of policy "to conserve the time of government employees for the conduct of official business, to minimize governmental involvement in controversial matters unrelated to official business, and to avoid expenditures of government time and money for private purposes").

The Board agrees that the clear statutory prohibition and the strong governmental policies behind it would have precluded the subpoenas issued if this were a situation involving private litigants engaged in an unrelated suit that peripherally involved an ADOSH violation. However, the Board contends that, under the unique circumstances of this case, the employees' appeal

from a disciplinary action based on an ADOSH violation constitutes an "appearance ... *related* to a hearing held pursuant to this article" because of the intertwined issues of employee misconduct common to both the personnel appeal and the ADOSH protest hearing. We therefore must examine the nature of the "employee misconduct" defense.

The provisions of Article 10 of Chapter 2 of Title 23 require every employer to provide a workplace "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees," and to comply with all ADOSH standards, regulations, and orders issued pursuant to Article 10. A.R.S. § 23–403. The legislative intent of these provisions is to "assure so far as possible every working man, woman and child in the state safe and healthful working conditions." Laws 1972, ch. 136, § 1. If ADOSH discovers a violation after inspection and investigation, it may cite the employer and assess a civil penalty, according to whether the violation is "serious," "non-serious," or "de minimus." A.R.S. §§ 23–415 to –418. In this case, the violation alleged constituted a "serious" violation, which is defined as "a condition or practice in a place of employment which violates a ... regulation ... and produces a substantial probability that death or serious physical harm would result, *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of such condition or practice."* A.R.S. § 23–401(12) (emphasis added). The emphasized portion of the statute is the basis for what is commonly known as the "employee misconduct" defense.

Under federal OSHA law, which both parties cite as analogous in this case, employer knowledge of the employee violation is also a required element to establish a serious violation. *See* 29 U.S.C. § 666(j); *Brennan v. OSHRC,* 511 F.2d 1139, 1142 (9th Cir.1975). If the conduct alleged to violate an OSHA regulation is shown to be an isolated event of employee misconduct that the employer could not reasonably foresee under the circumstances, the cita-

tion can be vacated, or the penalty eliminated or reduced. *See, e.g., id.; see generally Annotation, Employee Misconduct as Defense to Citation, Issued Pursuant to Provisions of Occupational Safety and Health Act (29 USCS §§ 651 et seq.), Arising Out of Alleged Violation of Standards Resulting in Death or Personal Injury of Employee,* 59 A.L.R. Fed. 395 (1982).

The issue of which party in an OSHA enforcement action bears the burden to establish unforeseeable employee misconduct has been decided with conflicting results among the federal circuits; that issue has not yet been resolved by the United States Supreme Court. *See L.E. Myers Co., High Voltage Div. v. Secretary of Labor,* 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (mem. dec. 1987) (denying *certiorari* with dissent from Justices White and O'Connor). Some circuits require the government to establish, as part of its *prima facie* case, that the violation was not the result of unforeseeable employee misconduct. *See Pennsylvania Power & Light Co. v. OSHRC,* 737 F.2d 350 (3d Cir.1984); *Capital Elec. Line Builders of Kansas, Inc. v. Marshall,* 678 F.2d 128 (10th Cir.1982); *Ocean Elec. Corp. v. Secretary of Labor,* 594 F.2d 396 (4th Cir. 1979); *Brennan, supra.* Other circuits place the burden on the employer to establish employee misconduct as an affirmative defense after the government has made its *prima facie* case of showing the employer's awareness of a potentially preventable hazard by introducing evidence that the employer failed to provide adequate equipment or to properly instruct its employees on safety precautions. *See Brock v. L.E. Myers Co., High Voltage Div.,* 818 F.2d 1270 (6th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987); *Danco Constr. Co. v. OSHRC,* 586 F.2d 1243 (8th Cir.1978); *Forging Indus. Ass'n v. Secretary of Labor,* 773 F.2d 1436 (4th Cir.1985). Another group of federal cir-

cuits places the burden on the employer to establish a defense that it has established and enforced adequate safety rules, without imposing a *prima facie* burden on the government other than a showing that a violation occurred. *H.B. Zachry Co. v. OSHRC,* 638 F.2d 812 (5th Cir.1981); *General Dynamics Corp. v. OSHRC,* 599 F.2d 453 (1st Cir.1979). Despite this confusing patchwork of law on the burden of proof on this issue,[7] however, the cases have uniformly provided several factors necessary to establish that a safety violation occurred as a result of an isolated event of unforeseeable employee misconduct:

1. The employee who committed the violation is usually an experienced employee who has been made aware of the hazards of the job through training. Placing an inexperienced employee or supervisor in a hazardous activity may negate the defense. *See, e.g., Floyd S. Pike Elec. Contractor, Inc. v. OSHRC,* 576 F.2d 72 (5th Cir.1978).

2. The employer has instituted an adequate safety program that includes employee training and safety meetings that provide instruction on the applicable regulations. "Evidence that the employer effectively communicated and enforced safety policies to protect against the hazard permits an inference that the employer justifiably relied on its employees to comply with the applicable safety rules and that violations of these safety policies were not foreseeable or preventable." *Austin Bldg. Co. v. OSHRC,* 647 F.2d 1063, 1068 (10th Cir.1981).

3. The employer makes available to all employees the necessary safety equipment, and instructs them when to use it. *See, e.g., Capital Elec. Line Builders, supra.*

4. The employer has a consistent policy of enforcing its safety regulations and provides appropriate sanctions against employees who violate safety rules. A

---

7. We need not, in the context of this case, decide which party bears the burden of establishing employee misconduct or the lack thereof in the ADOSH citation protest. We merely point out those cases to indicate that the City need not

necessarily establish that its employee discipline was affirmed before the Board in order to decide the issue whether employee misconduct occurred.

history of reprimanding employees immediately for safety violations and of taking more serious enforcement measures of suspension or termination for repeated violations indicates "a uniformly and effectively enforced work rule." *Daniel Int'l Corp. v. OSHRC,* 683 F.2d 361, 364 (11th Cir.1982).

In making the connection between the ADOSH proceeding and the Phoenix Civil Service Board appeal, the Board focuses on the fourth factor above, that is, the City's need to establish "a uniformly and effectively enforced work rule." The trial court agreed, apparently finding that the outcome in the personnel appeal is somehow determinative of the City's ability to succeed in protesting the ADOSH citation.

We, however, disagree. The employee misconduct defense does not require an affirmed appeal in a contested personnel action; [8] it merely requires a showing that the employer takes consistent and uniform enforcement measures to assure compliance with a work rule that it has effectively communicated to its employees. In our opinion, preventing the testimony of ADOSH employees in the Board's personnel action will not preclude the City's ability to make such a showing in the ADOSH proceeding, regardless of the burden of proof. We reach this conclusion for several reasons.

First, what both the Board and the trial court have overlooked is the ability of the City to subpoena the ADOSH inspectors in the hearing on the ADOSH citation.[9] Because that hearing will be held under authority of A.R.S. § 23–420, the provisions of A.R.S. § 23–408(E) will not apply to preclude either subpoenas of the ADOSH inspectors or admission of ADOSH investigative materials, including the investigative report and photographs that the City contends will establish the employee misconduct. Thus the City is not prevented from making its case in the ADOSH proceeding because of the unavailability of this evidence in the personnel action before the Board.

Second, as our review of the employee misconduct defense has revealed, the finality of the employee's suspension is not necessarily the controlling factor in establishing the City's lack of knowledge of a serious violation under A.R.S. § 23–401(12). The City may establish the unforeseeability of the incident in question as well as the isolated nature of the event by reference to its existing safety programs and its prior history of compliance with the applicable regulation. ADOSH's reluctance to have its employees compelled into testifying in unrelated proceedings has not created the "catch 22" situation envisioned by the trial court where the City is unable to defend itself without evidence that only ADOSH can provide.

Under these circumstances, we find that the City's personnel action against its employees is not "related" to an ADOSH proceeding within the legislature's contemplation in enacting A.R.S. § 23–408(E). The clear public policy to conserve state ADOSH resources for the stated purpose of ensuring workplace safety would be defeated by allowing ADOSH employees to be compelled into testifying at administrative hearings or court actions to uphold disciplinary personnel actions against employees who have caused their employers to be charged with an ADOSH violation.

We therefore hold that the Board's subpoenas were unenforceable pursuant to A.R.S. § 23–408(E). For the foregoing reasons, we remand with directions to vacate the order enforcing the subpoenas and to dismiss the complaint.

Although petitioners have requested an award of attorneys' fees incurred in this

---

**8.** Indeed, it would be inequitable for ADOSH to take the position in the citation protest that the outcome of the personnel appeal before the Board defeated an employee misconduct defense, when ADOSH allegedly has the only evidence of such misconduct and refused to provide it in the personnel appeal.

**9.** At time of oral argument on this special action, we were informed that the ADOSH citation hearing had been held and that both ADOSH employees appeared, testified, and were subject to cross-examination by the employer regarding the misconduct of the City employees.

special action, they failed to indicate what authority exists as a basis for that award. We therefore deny the request for attorneys' fees.

Special action jurisdiction accepted; relief granted.

GRANT and WEISBERG, JJ., concur.