873 P.2d 679

**ARIZONA PUBLIC SERVICE COMPANY, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Division of Occupational Safety and Health of the Industrial Commission of Arizona, Respondent Party in Interest.**

No. 1 CA–IC 92–0217.

Court of Appeals of Arizona, Division 1, Department A.

March 29, 1994.

Snell & Wilmer by Charles P. Keller, Phoenix, for petitioner.

Anita Valainis, Chief Counsel, Industrial Com'n of Ariz., Phoenix, for respondent.

Division of Occupational Safety and Health by Laura L. McGrory and Ronald M. Andersen, Phoenix, for respondent party in interest.

## OPINION

CLABORNE, Judge.

This case arises from a citation issued by the Division of Occupational Safety and Health ("the Division") against Arizona Public Service ("APS") for a serious violation. APS brings this Special Action from the decision of the Occupational Safety and Health Review Board ("the Review Board") finding APS liable for the citation.

### Facts and Procedural History

The parties stipulated to the following facts for purposes of the motion to the Administrative Law Judge ("the ALJ") and the appeal to the Review Board.

Charles Beecroft Trenching Company ("Beecroft") and APS entered into a contract under which Beecroft was to perform construction and electrical services for APS.

Beecroft's responsibilities under the contract were to replace and install a new electrical conduit in an energized switching cabinet.

While performing work pursuant to the contract, Randy Mead of Beecroft touched an energized line inside the switching cabinet and was killed. APS had created and controlled the hazard to which Mead was exposed. At the time of the accident, only Beecroft employees were present at the jobsite except for an APS inspector who was there to assure the job was performed satisfactorily.

Following an inspection and investigation by the Industrial Commission, Beecroft and APS were cited for serious violations.[1] The citation issued against APS was for a violation of 29 CFR 1926.950(d)(1)(c)(V). The Division also imposed a $3,500 fine against APS. The parties waived formal hearing before the ALJ and submitted the issues to the ALJ on the above-stipulated facts. The issue submitted to the ALJ was "whether ... [APS] was properly cited by the [Division] for the exposure of a Beecroft employee to a hazard under the multi-employer worksite theory when APS created and controlled the hazard, but only two employers were on site (APS and Beecroft), and no employee of APS had access to or exposure to the hazard." The ALJ issued his Findings and Conclusions and Order, ruling that APS was properly cited for exposing Mead to the hazard under the multi-employer worksite theory.

APS timely appealed to the Review Board. Following oral argument, the Review Board issued its Decision and Order concluding that:

APS has failed to sustain its burden of proving that Beecroft was an independent contractor. Therefore, APS' liability must be determined based on the multi-employer worksite rule. Because two different employers were on site, the multi-employer worksite rule applies. Because APS has admitted that it created and controlled the hazard, and that an employee of Beecroft was fatally injured on the worksite,

1. Beecroft was cited for violations of 29 CFR 1926.21(b)(2) and 29 CFR Part 1926.- 950(d)(1)(c)(V). Beecroft did not contest the citation.

APS is liable for the citation. The decision of the [ALJ] is affirmed.[2]

APS now seeks special action review of the Review Board's decision pursuant to Ariz. Rev.Stat.Ann. ("A.R.S.") section 23–423(I) (1983).

### Discussion

The following issues are raised for our review:

1. Whether APS can be cited for the exposure of a Beecroft employee to a hazard it created and controlled under the multi-employer worksite theory.

2. Is it within the Division's discretion to issue a citation against APS when the issuance of the citation does not comply with the Division's Field Operations Manual Provisions?

### 1. *Standard of Review*

■ We review the Review Board's findings of fact and conclusions of law based on its *de novo* review of the record. *Division of Occupational Safety & Health v. Ball, Ball & Brosamer, Inc.*, 172 Ariz. 372, 373, 837 P.2d 174, 175 (App.1992); A.R.S. § 23–423(I). We will hold the Review Board's findings of fact to be conclusive where they are supported by substantial evidence. *McAfee–Guthrie, Inc. v. Division of Occupational Safety & Health*, 128 Ariz. 508, 510, 627 P.2d 239, 241 (App.1981). Administrative adjudications of the Review Board are given great weight and we will not set aside its decision unless arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *Marshall v. Cities Serv. Oil Co.*, 577 F.2d 126, 131 (10th Cir.1978); *Marshall v. Knutson Constr. Co.*, 566 F.2d 596, 600 (8th Cir.1977).

---

2. One Review Board member held in a dissenting opinion that the citation against APS should be vacated since "the plain meaning of 'multi' is more than two."

3. Arizona has adopted the Federal Occupational Safety and Health Standards, Code of Federal Regulations, Title 29, Part 1926 commonly known as "OSHA." *See* A.R.S. § 23–410 (Supp. 1993); A.C.R.R. R4–13–601 (1991). We, therefore, find the federal case law interpreting those regulations persuasive. *See Arizona Civil Rights*

### 2. *Multi-employer Worksite Theory*

We begin with an examination of the creation and development of the multi-employer worksite theory, and then apply it to the facts of this case.

■ Generally, an employer is held responsible for the exposure or access to hazardous conditions it creates or controls only to its own employees. *See* A.R.S. § 23–403(A) (Supp.1993). The intent behind the statute is to "assure so far as possible every working man, woman and child in the state safe and healthful working conditions." Laws 1972, ch. 136, § 1; *Arizona Div. of Occupational Safety & Health v. Superior Court*, 176 Ariz. 557, 863 P.2d 276, 281 (App. 1993). However, an exception has been developed to multi-employer worksites whereby the employer responsible for the hazard may be cited regardless of whether it is the employers' employees who are exposed or the employees of another employer. *See* Benjamin W. Mintz, *OSHA: History, Law, and Policy*, The Bureau of National Affairs, Inc. (1984) 479–81. This theory was first recognized by the Court of Appeals for the Second Circuit in *Brennan v. OSHRC and Underhill Constr. Corp.*, 513 F.2d 1032 (2d Cir.1975).[3] The court in *Brennan* said that where

> an employer is in control of an area, and responsible for its maintenance, we hold that to prove a violation of OSHA, [the Division] need only show that a hazard has been committed and that the area of the hazard was accessible to the employees of the cited employer or those of other employers engaged in a common undertaking.[4] *Id.* at 1038.

The multi-employer worksite theory was revisited and a comprehensive view on cita-

---

*Div. v. Hughes Air Corp.*, 139 Ariz. 309, 312, 678 P.2d 494, 497 (App.1984).

4. "[T]o endorse a policy whereby several different employers on a common construction site would be responsible for eliminating the hazardous condition by literal compliance with the applicable standard ... [would be] economically wasteful, undesirable in that it might necessitate litigation between the parties to affix liability, and in some cases impractical." *Anning–Johnson Co.* at 1197.

tions for violations was articulated in *Anning–Johnson Co.*, 4 OSHC 1193 (Rev. Comm'n 1976) and *Grossman Steel & Aluminum Corp.*, 4 OSHC 1185 (Rev. Comm'n 1975). Those cases held that each employer at a construction site is responsible for assuming that its conduct does not create hazards to any employees at the site; and, because of the supervisory nature of a general contractor and its ability to obtain abatement of hazards, the general contractor is responsible for violations it reasonably could have been expected to prevent or abate by reason of its position. *Anning Johnson Co.* at 1198–99; *Grossman Steel* at 1188. Both cases went on to say that each employer is expected "to make a reasonable effort to detect violations of standards not created by it but to which its employees have access and, when it detects such violations, to exert reasonable efforts to have them abated or take such other steps as the circumstances may dictate to protect its employees." *Grossman Steel* at 1189. Thus, the general rule we are left with is that an employer commits a violation if it fails to comply with a safety or health standard and its own employees or those of another are exposed to the resulting hazard. *See Plains Coop. Oil Mill, Inc.*, 11 OSHC 1370–73 (Rev. Comm'n 1983); *Harvey Workover, Inc.*, 7 OSHC 1687, 1688–89 (Rev. Comm'n 1979). These rules were formulated to "assure that all employees on [a multiemployer worksite] receive the protection intended by the [OSHA] standards." *See Gelco Builders, Inc.*, 6 OSHC 1104, 1106 (Rev. Comm'n 1977) (citations omitted).

APS claims that the multi-employer worksite rule does not apply here because Beecroft was an independent contractor. We recognize that the multi-employer worksite cases have been historically limited to the contractor/subcontractor relationship. The reasoning behind the development of the multi-employer worksite theory was that the general contractor had control over the worksite and therefore the ability to abate the hazards. *See Knutson Constr. Co.*, 566 F.2d at 599 ("[g]eneral contractors normally have the responsibility and the means to assure that other contractors fulfill their obligations with respect to employee safety where those obligations affect the construction worksite"); *Perini Corp.*, 6 OSHC 1609, 1610 (Rev. Comm'n 1978) ("general contractor is responsible for violations it could prevent or abate by reason of its supervisory authority over the entire site"); *Grossman Steel* at 1188 ("the general contractor normally has responsibility to assure that the other contractors fulfill their obligations with respect to employee safety which affect the entire site"). Thus, the broad remedial purpose of protection from industrial injury for which the Occupational Safety and Health Act was enacted could be achieved. *See generally Cities Serv. Oil Co.*, 577 F.2d at 130.

▇ The multi-employer worksite theory has not been extended to cover the owner-contractee/independent contractor situation. *Farrell Roofing & Sheet Metal Co., Inc.*, 10 OSHC 1430, 1431 (Rev. Comm'n 1982). An employer often relies on an independent contractor's expertise to perform the work correctly since the contractor has greater expertise than the employer. *Fry's Tank Serv., Inc.* and *Cities Serv. Oil Co.*, 4 OSHC 1515, 1518 (Rev. Comm'n 1976), *aff'd, Marshall v. Cities Serv. Oil Co.*, 577 F.2d 126 (10th Cir. 1978). Unlike the contractor/subcontractor relationship, the hiring employer does not always have control over the worksite in an independent contractor situation. The hiring employer is not responsible for hazards created by the independent contractor unless it has reason to foresee that the independent contractor might perform the work in an unsafe manner. *Id.* Hence, an independent contractor does not qualify as an employer's employee for purposes of the Occupational Safety and Health Act where the hiring employer does not have control over the worksite or has not created and controlled the hazard. *See generally Harvey Workover, Inc.*, 7 OSHC at 1688–89.[5]

---

5. The multi-employer worksite theory has been extended to general industry situations and includes any worksite with multiple employers. *Harvey Workover, Inc.* at 1689; *see also Beatty* *Equip. Leasing, Inc.*, 4 OSHC 1211 (Rev. Comm'n 1976) ("Respondent's status as a materialman does not warrant the application of a

■ We find it significant that APS stipulated to the fact that it created and controlled the hazard to which Beecroft's employee, Mead, was exposed. Also, specific criteria must be shown before APS can establish that Beecroft was an independent contractor. *Id.* at 1689. The Review Board ruled that APS did not meet its burden of proving that Beecroft was an independent contractor. The only facts upon which APS attempted to establish the existence of an owner-contractee/independent contractor relationship was the existence of the contract. This fact alone does not establish an owner-contractee/independent contractor relationship. *See Griffin & Brand of McAllen, Inc.,* 6 OSHC 1702, 1703 (Rev. Comm'n 1978). Factors such as "(1) whom do the workers consider their employer; (2) who pays the workers' wages; and (3) who has the responsibility to control the workers" are considered by the Division in determining the relationship of the parties involved. *Griffin,* 6 OSHC at 1703. APS has not shown any of these factors. We therefore conclude that the record does not support the conclusion that Beecroft was an independent contractor. We now apply the multi-employer worksite theory to the facts here.

### 3. *Can APS be cited?*

■ The Division bears the burden of showing four elements in order to establish that APS is in serious violation of A.R.S. section 23–403. *See generally Harvey Workover, Inc.,* 7 OSHC at 1688. Those elements are: (1) the existence of conditions that did not comply with a standard; (2) the injured worker had exposure or access to the noncomplying condition; (3) employer knowledge of the noncomplying condition; and, (4) a substantial probability that the employee exposed would die or suffer serious physical harm. *Id.* at 1688–90. In the multi-employer worksite situation, the "employer that creates or controls noncomplying conditions is held responsible if employees of other employers are exposed or have access to the conditions." *Id.* at 1689. APS stipulated to the fact that it created and controlled the hazard to which Mead was exposed. If an employer controls the hazard in an area where the violation is committed, and the area is accessible to its employees or those of another engaged in a common undertaking, then that employer may be cited for a violation. *Underhill Constr. Co.,* 513 F.2d at 1038. Thus, the Division properly cited APS for the violation since it was responsible under the multi-employer worksite theory. Allowing APS to escape liability for creating and controlling the hazard would defeat the purposes of the Act. The Review Board did not abuse its discretion in finding APS liable for the citation.

### 4. *Field Operations Manual Provisions*

■ APS lastly contends that the citation should be deleted since the Division failed to follow its own Field Operations Manual ("FOM") in issuing the citation. Because of the institution of the multi-employer worksite theory, the Division can cite multiple employers. *See generally Anning–Johnson Co.* at 1198–99. We agree with the Review Board when it stated:

> Because the purpose of the Act is to insure in as many ways as possible that working conditions will at all times be safe, it appears obvious that two employers may be cited for the same violation. This policy of citing both employers will encourage initial compliance, as well as subsequent remedial compliance. Even if the FOM indicates that the Division could have cited Beecroft only, it certainly was within the Division's discretion and its power to cite APS as well.

In light of the multi-employer worksite present in this case, we find that it was clearly within the Division's discretion to cite APS since it was admittedly the one that created and controlled the hazard.

For the reasons set forth above, we affirm.

WEISBERG, P.J., and GARBARINO, J., concur.

rule different from that applied to subcontractors.").