Gary W. **BASTIAN**, Commissioner, Department of Labor and Industry, Relator,

v.

**CARLTON COUNTY HIGHWAY DEPARTMENT, Respondent,**

Occupational Safety and Health Review Board, Respondent.

No. CX–96–733.

Court of Appeals of Minnesota.

Nov. 5, 1996.

Review Denied Jan. 7, 1997.

Hubert H. Humphrey III, Attorney General, Susan C. Gretz, Assistant Attorney General, St. Paul, for Relator.

Marvin E. Ketola, Carlton County Attorney, James M. Ross, Jr., Assistant County Attorney, Carlton, for Respondent Carlton County Highway Department.

Considered and decided by WILLIS, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

In a divided opinion, the Occupational Safety and Health Review Board held that a county, the principal on a highway construction project, was improperly cited for OSHA violations because it did not have an employer-employee relationship with the injured worker. We agree with the review board's reversal of the cited violations, but on an alternate ground: that as a matter of law the county did not exercise a level of supervisory authority over the worksite that would create a reasonable expectation that it would prevent or abate the hazard that resulted in the citations. We affirm, but modify, the review board's decision.

## FACTS

The contested occupational safety and health citations were issued to Carlton County as an employer on a multi-employer construction worksite. The county, through a bidding process, selected a general contractor to improve a three-mile span of county highway. The general contractor, several subcontractors, and the county, as principal, were involved in the project.

The county's involvement in the project was primarily through three employees who participated in varying degrees: (1) a county project representative who spent most of every day at the construction site; (2) an assistant highway engineer who visited the site two or three times per week; and (3) the county highway engineer who spent the majority of his work time in his office and visited the site only periodically. The principal responsibility of these employees was to ensure that the project's construction work and materials conformed with the county's specifications. The county highway engineer, under the terms of the county's agreement with the general contractor, also had the authority to stop the construction in the event that the contractor failed to correct a hazardous condition on the site.

The citations that the Commissioner issued to the county followed five incidents in which construction equipment operated by employees of the general contractor and subcontractor came into contact with power lines on the construction site. The first four incidents occurred between July 19 and 28, 1993, and involved a subcontractor's employee. None of those four incidents resulted in injury, but at least three of them caused disruptions in electrical services.

The county first became aware of the power line strikes shortly after the fourth incident. After learning of the incidents from a power company representative, the assistant county highway engineer contacted the general contractor's foreman who reassured the assistant engineer that he had discussed the potential hazards with the equipment operator and that future strikes would not occur. By that time no equipment presenting a danger of power line strikes was being used on the same side of the road as the power lines.

The fifth power line strike occurred on August 3, 1993, when a backhoe operated by

one of the general contractor's employees returned to the power line area to assist with a bulldozer stuck in the mud and the backhoe came into contact with a power line. A worker who was not employed by the county sustained an electric shock when he touched the backhoe as an electrical current passed through it from the power line.

The county received citations for violations of three occupational safety and health regulations: 29 C.F.R. §§ 1926.20(b)(1), (2) (requiring safety programs and regular inspections by employers), 1926.21(b)(2) (requiring safety instruction for employees), 1926.550(a)(15)(i) (requiring operation of cranes outside a distance of ten feet from electrical lines rated less than 50kV) (1993). The general contractor also received citations for these violations.

The county contested its citations and the accompanying penalties, and, after a hearing, an ALJ sustained the violations. The Commissioner of the Department of Labor and Industry seeks review of the Occupational Safety and Health Review Board's reversal of that decision.

### ISSUES

I. Is the decision of the Occupational Safety and Health Review Board or the decision by the Commissioner of the Department of Labor and Industry entitled to deference?

II. Does the doctrine of multi-employer responsibility allow the Commissioner of the Department of Labor and Industry to issue citations to a principal on a multi-employer construction project for violations of occupational safety and health regulations that have not resulted from hazards to which the principal's own employees were exposed?

III. Did the county exercise a level of supervisory authority over the worksite that created a reasonable expectation that it would prevent or abate hazards resulting from the use of construction equipment by the employees of the general contractor and subcontractors on the site?

### ANALYSIS

### I

The Minnesota Occupational Safety and Health Act (OSHA) states that "[e]ach *em-ployer* shall comply with occupational safety and health standards or rules promulgated pursuant to [the act]." Minn.Stat. § 182.653, subd. 3 (1992) (emphasis added). The act defines "employer" as "a person who employs one or more employees and includes any person who has the power to hire, fire, or transfer, or who acts in the interest of, or as a representative of, an employer and includes * * * the state and all of its political subdivisions." Minn.Stat. § 182.651, subd. 7 (1992). The Department of Labor and Industry has adopted the statutory definition of "employer" in its regulations. Minn. R. 5215.0200, subpt. 7 (1991). We are required to address whether the term "employer," as used in these provisions, was intended to allow occupational safety and health citations to be issued to a political subdivision of the state whose employees were not exposed to hazards associated with the violations.

◼ An agency's interpretation of statutory language may be entitled to some weight when it is technical in nature and the agency's interpretation is of longstanding application. *Arvig Tel. Co. v. Northwestern Bell Tel. Co.*, 270 N.W.2d 111, 114 (Minn. 1978). An agency's interpretation of an ambiguous administrative regulation is generally entitled to considerable deference. *Saint Otto's Home v. Department of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn.1989). The parties dispute whether the agency interpretation to which we should defer is the interpretation of the Commissioner or that of the review board.

The United States Supreme Court, when presented with conflicting interpretations of a federal occupational safety and health regulation, resolved the conflict by deferring to the Secretary of Labor, the federal counterpart to the Commissioner, rather than to the Occupational Safety and Health Review Commission, the counterpart to the Minnesota Occupational Safety and Health Review Board. *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991). The Court reasoned that it should defer to the regulatory interpretation of the Secretary

because, by virtue of her rulemaking and enforcement powers, she was in a better position than the adjudicative Review Commission to develop expertise to assist in the interpretation of administrative rules. *Id.* at 150–57, 111 S.Ct. at 1175–79. Under the federal system, the Secretary does not exercise adjudicative powers. *Id.* at 151, 111 S.Ct. at 1176.

■ The Commissioner argues that the Supreme Court's rationale for deferring to the Secretary of Labor in *Martin v. OSHRC* provides support for the adoption of a rule of deference to the Commissioner's interpretation of occupational safety and health regulations in Minnesota. But the reasons for deference are less compelling in view of the differences between the federal and state OSHA administrative structures. In *Martin v. OSHRC*, the Supreme Court deferred to a regulatory interpretation that the Secretary of Labor made independently of any adjudicative process. By contrast, the administrative interpretation that the Commissioner claims should receive deference in Minnesota is the interpretation of an adjudicative decisionmaker, an administrative law judge. An ALJ who decides a case under the Minnesota OSHA performs no internal rulemaking or enforcement functions, and thus is not likely to develop the type of expertise acquired by the Secretary of Labor to whom the Supreme Court deferred in *Martin v. OSHRC*. *See* Minn.Stat. § 14.48–.56 (1994) (establishing Office of Administrative Hearings and describing procedures for the appointment of ALJs). Although the ALJ's determinations become the Commissioner's decisions, they do so by operation of law. Minn.Stat. § 182.661, subd. 3 (1992). Consequently, the Commissioner's decisions do not reflect the kind of specialized judgment that would warrant a high degree of deference. Because the reasons for deferring to the Secretary of Labor under the federal structure are at most only minimally present here, we conclude that although we may give deference to the Commissioner's decision, that deference is very slight.

## II

In holding that the county was not liable for the OSHA citations that it received, the review board relied on its finding that there was no employer-employee relationship between the county and the workers who were exposed to the hazards that gave rise to the citations. The Commissioner asserts that the existence of such an employer-employee relationship is irrelevant for the purpose of determining liability for an OSHA violation that has occurred on a multi-employer construction site and proposes an alternative framework for determining liability in this context.

■ In case law developed under the federal OSHA, the federal Occupational Safety and Health Review Commission and federal courts have recognized two situations in which an employer on a multi-employer construction site may be properly cited for occupational safety and health violations that do not result from the exposure of the employer's own workers to a hazard. In the first situation, an employer may be responsible for a federal OSHA violation if the employer creates or controls the hazard. *Red Lobster Inns,* 1980 O.S.H. Dec. (CCH) ¶ 24,636, at 30,220 (Rev. Comm'n July 18, 1980). Under the second scenario, an employer may be responsible for violations of other employers when it could reasonably be expected to have prevented or abated the violations due to its supervisory authority and control over the worksite. *Id.*

These exceptions for imposing federal OSHA liability on employers whose workers have not been exposed to a hazard have developed in cases that typically involve interactions between a general contractor and subcontractors who work on the same construction site. *See* Mark A. Rothstein, *Occupational Safety and Health Law* § 165 (3d ed. 1990). General contractors have been held liable for federal OSHA violations in such cases based on the presumption that they ordinarily have the responsibility and means to ensure that subcontractors on the same worksite comply with any occupational safety and health regulations that may apply to them. *Marshall v. Knutson,* 566 F.2d 596, 599 (8th Cir.1977); *Gil Haugan,* 1979 O.S.H. Dec. (CCH) ¶ 24,105, at 29,290 (Rev. Comm'n Dec. 20, 1979).

■ But this presumption does not apply to principals, who by nature do not typically have the same kind of supervisory authority as general contractors over multi-employer worksites. *See, e.g., Arizona Pub. Serv. Co. v. Industrial Comm'n*, 178 Ariz. 341, 873 P.2d 679, 682 (Ct.App.1994) ("Unlike the contractor/subcontractor relationship, the hiring employer does not always have control over the worksite in an independent contractor situation."). Consequently, while we agree with the Commissioner that a principal may be liable for Minnesota OSHA violations that do not involve the exposure of the principal's own employees to a hazard, we conclude that liability attaches only if (1) the principal created or controlled the hazard, or (2) the Commissioner presents evidence that the principal exercised a level of supervisory authority over a worksite that created a reasonable expectation that it would prevent or abate the hazard resulting in the violation. When using the latter basis for citing a principal, the Commissioner may not rely on a presumption of supervisory authority; the Commissioner must affirmatively prove that the principal had the kind of supervisory authority typically exercised by the general contractor or controlling employer on a worksite.

### III

The Commissioner does not contend that the county created or controlled the hazards for which it received the Minnesota OSHA citations, but asserts that the county had the requisite level of supervisory authority over the multi-employer construction site to be liable for the violations.

■ The ALJ's decision, which became the Commissioner's decision, did not rely on the county's actual supervision of worksite activities but was based on the county's failure to exercise its contractual authority to stop the work under unsafe conditions. The extension of multi-employer liability for OSHA violations is based not on contractual relationships, but on the actual exercise of authority on the worksite. Mere contractual authority is insufficient to establish that a principal had the level of supervisory authority over a multi-employer worksite required

for OSHA liability to attach. Additional evidence of the principal's actual involvement in directing activities on the project must be shown.

■ Active involvement by an employer in directing other employers' workers at a construction site is essential to the extension of OSHA liability under the multi-employer doctrine. *See Gil Haugan*, 1979 O.S.H. Dec. (CCH) at 29,289–90 (affirming citation of general contractor who admitted to having at least "'a limited right' to direct the employees of a subcontractor"). The Commissioner maintains that the county demonstrated such involvement on a few occasions, for example, when the county's employees talked to the general contractor's foreman about the inadequate placement of warning signs for motorists and the improper installation of erosion control devices on the project. These few instances of direction by the county are minimal and, in the case of the warning signs, the county's activity appears to be related to its underlying general responsibility for the direction and safety of traffic on a county roadway. Overall, the record reflects that it was the general contractor, and not the county, that coordinated the subcontractors' activities. While the county had a representative on the construction site every day, he did not direct the day-to-day activities of the project; rather, his activities were dependent on "what the [general] contractor [was] doing that particular day."

■ We recognize that an administrative agency's determination must be upheld if it is supported by substantial evidence. *See* Minn.Stat. § 14.69(e) (1994). But the limited scope of review encompassed by the "substantial evidence" test is directed at the sufficiency of the agency's findings of fact. *See Cable Communications Bd. v. Nor–West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984). The issue here, however, is whether the proper legal standards have been applied, and thus presents a question of law. *Cf. Hunter v. Crawford Door Sales*, 501 N.W.2d 623, 624 (Minn. 1993) (holding that, in workers' compensation context, determination of employment status is a question of law).

The review board and the Commissioner applied incorrect standards to determine whether the county, as principal, could be held liable for OSHA violations on a multi-employer worksite. Applying the proper legal standard, the evidence was insufficient to establish liability as a matter of law. *See* Minn.Stat. § 14.69(d) (1994) (reviewing court may reverse administrative decision affected by error of law); *cf. Benson v. Marshall County,* 163 Minn. 309, 309, 204 N.W. 40, 41 (1925) (reversing Industrial Commissioner's determination that workers' compensation claimant was not in employ of county at time of injury because whether evidence conclusively establishes a particular element is a question of law). The Commissioner failed to show that the county exercised a level of worksite authority that was sufficient to create a reasonable expectation that it would prevent or abate the hazard that resulted in the contested citations.

## DECISION

The multi-employer doctrine may be invoked to attach liability to an employer on a multi-employer construction project for violations of occupational safety and health regulations in some cases. But the record conclusively establishes, as a matter of law, that the county did not have a level of actual supervisory authority over the worksite that created a reasonable expectation that it would prevent or abate the hazard that resulted in the contested citations. We therefore affirm, on modified grounds, the review board's decision that the Commissioner improperly cited the county.

**Affirmed as modified.**

KALITOWSKI, Judge, dissenting.

I respectfully dissent. The issue before the Occupational Safety and Health Review Board was whether there was substantial evidence to support the Commissioner's determination that Carlton County had sufficient supervisory authority over the worksite to be reasonably expected to detect and abate the hazard. Rather than review the evidence, the review board erroneously reversed the Commissioner because the county was not the employer of the injured worker.

With regard to the issue before the review board, the evidence in the record established: (1) the county had specific contractual authority "to suspend the work either wholly or in part, due to the failure of the contractor to correct conditions unsafe for the workmen or the general public"; (2) the county exercised direct control over the contractor with respect to contractual requirements involving erosion at the construction site and proper signage for traffic control; (3) the county knew of four previous power line strikes at the site within an eight-day period and was asked by Minnesota Power to call a meeting with the general contractor, Minnesota Power and county representatives, but no meeting was scheduled; and (4) immediately after the accident at issue, the county convened a meeting with the contractor and Minnesota Power to identify the areas on the worksite that would pose a hazard with regard to overhead power lines and to discuss ways of abating the hazard.

Because there is substantial evidence to support the Commissioner's determination regarding the county's authority over the worksite, the Occupational Safety and Health Review Board was required to affirm the Commissioner.