Raymond J. DONOVAN, Secretary of Labor, Petitioner,

v.

MISSOURI FARMERS ASSOCIATION d/b/a Odessa MFA Exchange and Occupational Safety and Health Review Commission, Respondents.

No. 81–1919.

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1982.

Decided March 29, 1982.

T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Counsel for Appellate Litigation, Ann D. Nachbar, U.S. Dept. of Labor, Washington, D. C., Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., for Secretary of Labor.

Alfred J. Hoffman, Gen. Counsel, Columbia, Mo., Cullen Cline, Butcher, Cline, Mallory & Covington, Columbia, Mo., for Missouri Farmers Ass'n.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

The Secretary of Labor (the Secretary) petitions this court for review of a determination by the Occupational Safety and Health Review Commission (OSHRC) that Missouri Farmers Association, d/b/a Odessa MFA Exchange (MFA), did not violate the "general duty clause"[1] of the Occupational

---

1. Section 5(a)(1) of the Occupational Safety and Health Act, 29 U.S.C. § 654(a)(1) (1976), imposes a general duty on employers as follows:

Safety and Health Act of 1970 (the Act), 29 U.S.C. §§ 651–78, by failing to monitor the chemical composition of the atmosphere in the basement pit area of its country grain elevator at Odessa, Missouri, and by failing to provide a safety belt with a lifeline for workers entering the pit.

The administrative law judge at OSHRC (Alan M. Weinman) vacated the Secretary's citation for the two violations, on the ground that the circumstances at the Odessa elevator did not constitute "recognized hazards" within the industry.[2] When the Commission failed to grant the Secretary's petition for discretionary review, the administrative law judge's decision became final. We affirm the administrative law judge's order regarding the atmospheric testing. Although a hazard existed at the time, we do not believe it had been "recognized" within the meaning of the Act.

We reverse the administrative law judge's decision that MFA did not violate the Act by failing to provide safety belts at the Odessa elevator. The record amply indicates the obviousness of the safety hazard to employees lowered into an unventilated grain elevator pit, which emits a strong odor of decomposing grain, without wearing a safety belt and a lifeline attachment.

## I. *Background.*

The Odessa grain elevator is a relatively small, "country elevator," serving local farmers. In July 1980, an elevator employee filed a complaint with OSHA after his superior ordered him, along with two other employees, to clean grain out of the basement (or pit) of the elevator. Approximately one hundred bushels of grain had accumulated on the pit floor during the course of operations. The grain began to rot after becoming damp, and emitted a strong odor, like rotten eggs. The pit measured roughly fifteen feet high by twelve feet wide by thirty feet long and was not specially ventilated. Access could be obtained only through a manhole cover.

The employee refused to descend into the pit, contending that it was unsafe. He argued with his supervisor that a septic tank firm should clean the pit. Another employee eventually entered the pit, but had to abandon his cleanup effort for lack of assistance and a septic tank service completed the job.

In response to the safety complaint, an OSHA industrial hygienist inspected the Odessa elevator and cited MFA for two violations of section 5(a)(1) of the Act as follows:

> Safety belts and lifelines were not provided for quickly removing an employee from a confined space in case of an emergency[,]

and

> Monitoring for oxygen deficiency and for the presence of toxic and explosive vapors was not conducted prior to employee's entry and work in the pit the day it was cleaned.

The Secretary deemed the violations "serious," and assessed a $560 penalty for each one.

In a hearing before the administrative law judge, the Secretary presented testimony by industrial hygienists that wet, decomposing grain can produce byproducts such as hydrogen sulfide, methane, nitrogen, and carbon dioxide. Because the rotting grain produces an oxygen-consuming chemical reaction, the experts recommended atmospheric testing for oxygen deficiency or combustible gases, and the use of lifelines or harnesses for anyone entering such a confined space.

MFA contested the citation on the ground that the conditions at the Odessa elevator did not constitute "recognized haz-

---

§ 654. *Duties of employers and employees*
(a) Each employer—
 (1) shall furnish to each of his employees employment and a place of employment which are free from *recognized hazards* that are causing or are likely to cause death or serious physical harm to his employees[.] [Emphasis added.]

2. The administrative law judge's decision is summarized at 3 Empl. Safety and Health Guide (CCH) ¶ 25,532.

ards" within the meaning of section 5(a)(1). Alleging that a hazard is "recognized" only if it is actually known to the particular employer or within the industry generally, MFA denied knowledge of the hazards and maintained that the conditions at the Odessa elevator did not violate industry safety practices. MFA considered the relevant industry as *country* grain elevators, and sought to limit the significance of the experts' testimony by showing that it was based on their experience with and knowledge of larger, terminal elevators. An informal survey of country elevators in Odessa, Missouri, revealed that none of them had oxygen-monitoring equipment.

The administrative law judge's conclusion that the Secretary had failed to show a violation of hazards recognized within the industry seems to rest on an acceptance of MFA's definition of the relevant industry. Because the experts who testified for the Secretary "made no claims about actual industry practices" at country elevators, the administrative law judge concluded that the record did not contain substantial evidence of recognized hazards, and vacated the citations.

## II. *Atmospheric Testing.*

▮ In reviewing agency decisions of this type, this court's scope of review is limited.[3] *See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Marshall v. Knutson Construction Co.,* 566 F.2d 596 (8th Cir. 1977). We cannot say that the administrative law judge abused his discretion in concluding that the Secretary had failed to demonstrate that the lack of atmospheric monitoring at the Odessa Elevator constituted a "recognized hazard."

In affirming this aspect of the OSHRC order, however, we do not endorse the administrative law judge's view that MFA's survey of country grain elevators in the Odessa, Missouri, neighborhood constituted "substantial testimony relative to industry safety practices." Actual industry custom and practice do not necessarily set the standard of care required by the Act.

There may * * * be instances where industry practice fails to take reasonable precautions against hazards generally known in the industry; in such event it may not be unfair to hold the employer to a standard higher than that of actual practice. [*Cape & Vineyard Division of New Bedford Gas v. OSHRC,* 512 F.2d 1148, 1152 (1st Cir. 1979).]

*See also Bristol Steel & Iron Works v. OSHRC,* 601 F.2d 717, 722–23 (4th Cir. 1979).

In this case, however, we agree with the administrative law judge's conclusion that the Secretary failed to show the need for atmospheric monitoring equipment as a "recognized hazard" within the industry. The general duty clause of the Act does not provide specific safety guidelines for various occupational settings. Moreover, the expert opinion presented by the Secretary in this case does not persuade us that country grain elevators had received adequate warning of a duty to implement atmospheric testing.

We acknowledge the validity of the experts' testimony, however, which emphasized the dangers posed by the accumulation of toxic gases from rotting grain in confined spaces, such as the pit of a country grain elevator. The expert testimony in this case and the publication of this opinion should serve notice to other country elevator operators that the toxic effects of decomposing grain in confined spaces

---

**3.** The Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1976), defines the scope of review as follows:

§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\* \* \* \* \* \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

throughout the grain-handling industries, including country elevators, constitute recognized hazards to the safety of employees.

### III. *Safety Belts.*

 The administrative law judge also vacated, without discussion, the citation for MFA's failure to provide safety belts and lifelines to aid rescue in case of an emergency while the worker is in the pit.[4] The need for such a safety device seems obvious even in the absence of expert opinion.

Workers face an obvious hazard in descending through a manhole into a pit area fifteen feet deep which is unventilated, almost completely enclosed, and without a ready means of exit in case of emergency. Entry into such a confined space is a hazard which any employer should recognize, aside from the actual existence of toxic gases.

We affirm in part, reverse in part, and remand to the Commission for entry of a modified order consistent with this opinion.

---

**4.** The elevator in question did have a safety belt as part of its equipment but did not supply the belt and lifeline to the employees who entered the pit.