James NELSON, Appellant,

v.

RODGERS HYDRAULIC INCORPO-
RATED, etc, Respondent,

Skinner Precision Industries, Inc.,
etc., Respondent,

Cecil Whetstone, Respondent.

RODGERS HYDRAULIC INCORPO-
RATED, etc., third party
plaintiff, Respondent,

v.

HOSSFELD MANUFACTURING
COMPANY, third party
defendant, Respondent,

and

Fireman's Fund Insurance Company,
intervenor, Respondent.

No. C9–84–68.

Court of Appeals of Minnesota.

July 3, 1984.

Duane M. Peterson, Peterson & Thompson, Ltd., Winona, for appellant.

William Hull, Winona, for respondent Whetstone.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal from an award of summary judgment to respondent Whetstone.

The trial court ruled that there was no basis upon which Whetstone could be found liable to appellant Nelson and that Minn. Stat. § 176.061(5)(c) (1982) is constitutional. We affirm.

## FACTS

On September 29, 1980, James Nelson's hand was caught between the jaws of a hydraulic gap press during the course of his employment with Hossfeld Manufacturing Company (Hossfeld). Two fingers were later amputated. He had worked at Hossfeld since 1974.

Hossfeld manufactures two machines, the Hossfeld Universal Bender (iron bender) and the Hossfeld Rock Drill. There are seven shareholders in the company. Whetstone is one shareholder. At the time of Nelson's injury, Whetstone was vice-president, production manager, and head of the iron bender department. Hossfeld corporate by-laws state that the vice-president may perform the duties of the president in his absence, but assigns no other duties to the vice-president. During the three years Whetstone was vice-president, he presided at only one meeting. His general duties were supervisory and primarily involved scheduling the work. His duties did not include training employees. Such training was the province of the shop foreman.

An hydraulic gap press incorporates two large slabs of metal. The operator inserts the metal part to be bent between the slabs and then pulls a lever (hydraulic valve) that causes one slab to push against the other with sufficient force to bend the metal. It can be used for hot or cold metal. Defendant Rodgers Hydraulic, Inc. manufactured this press, and defendant Skinner Precision Industries, Inc. manufactured the high-pressure hydraulic valve.

There are two safety devices available to prevent the kind of accident appellant suffered. Guards can be placed around the pinch point (where the slabs meet) or a two-handed control device can replace the lever, forcing the operator to remove his hands from the pinch point. Neither device was installed on the Hossfeld press.

Appellant never received any instruction on the proper use of the press, but learned from watching other employees. He had pinched his finger in a similar manner in 1974, resulting in several stitches. When appellant injured himself in 1980, he was squashing a load of sockets, placing each small piece individually in the press. He had performed the routine many times before. The press was located in the bender department.

Earlier on the Friday before the accident, appellant noticed that the gap press jumped forward. He reported it to Anthony Burns, head of the drill department, since Whetstone was not in the shop at that time. Burns watched the press and tried to get it to jump, but did not see any problem. Whetstone found out about the complaint sometime after the accident. Whetstone had occasionally made routine maintenance repairs to the press. The last time he did so was twenty-one months before the accident.

Nelson brought this action against his employer, the manufacturer of the press, the manufacturer of the valve, and Whetstone as a corporate officer. Whetstone then filed his motion for summary judgment. In response, Nelson amended his complaint to allege Whetstone was a co-employee liable for his gross negligence. Nelson also challenged the constitutionality of Minn.Stat. § 176.061(5)(c). The Attorney General declined to intervene.

## ISSUE

Is respondent Whetstone entitled to summary judgment on the issue of his liability to appellant?

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue as to any material fact, and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56. Here there is no dispute as to any material fact.

Appellant's amended complaint names respondent Whetstone both as a corporate

officer and as a co-employee. Appellant alleges Whetstone was grossly negligent in:

1. failing to provide a safe place to work;
2. failing to properly guard the press;
3. failing to inspect the press for defects;
4. providing a defective press;
5. failing to warn appellant of the defect or instruct him in its proper use.

The complaint further alleges that Whetstone repaired the press and turned it over to Nelson, knowing or having reason to know it was dangerous.

According to the statute:

[A] co-employee working for the same employer is not liable for a personal injury incurred by another employee unless the injury resulted from the gross negligence of the co-employee or was intentionally inflicted by the co-employee.

Minn.Stat. § 176.061(5)(c) (1982).

The trial court granted Whetstone's motion for summary judgment, concluding that there were no grounds for any personal liability of Whetstone in the theory of gross negligence.

Any right appellant may have to sue Whetstone is rooted in *Dawley v. Thisius*, 304 Minn. 453, 231 N.W.2d 555 (1975). *Dawley* was decided before the statute was amended in 1978 to impose the limitation on suits against co-employees. Thisius was the general manager and secretary of plaintiff's employer. *Dawley* authorized suits against co-employees and included corporate officers, general supervisors, and foremen in the definition of co-employee. *See* Annot., 21 A.L.R.3d 845 (1968).

However, the court in *Dawley* noted that the right to bring an action against a co-employee was affected by the policy behind worker's compensation. A claim must be based on the co-employee's acts of direct negligence towards the plaintiff, his personal fault rather than any fault vicariously imposed on him. It must be based on the breach of a personal duty owed to the plaintiff, not just the co-employee's general

administrative functions. *Behr v. Soth*, 170 Minn. 278, 212 N.W. 461 (1927), cited in *Dawley*, 304 Minn. at 455, 231 N.W.2d at 557, also emphasizes any liability of a third party is based on a violation of a personal duty.

All of Nelson's claims here relate to the alleged duty of Whetstone to provide a safe work place and equipment. Such a duty exists, but it is the duty of the employer, not the employee Whetstone. *Dawley, id.* at 456, 231 N.W.2d at 558. This duty is nondelegable. *Novotny v. Bouley*, 223 Minn. 592, 27 N.W.2d 813 (1947). It includes the duty to warn of dangers and instruct employees on safety. *Berg v. Johnson*, 252 Minn. 397, 90 N.W.2d 918 (1958).

In *Peterson v. Kludt*, 317 N.W.2d 43 (Minn.1982), the Minnesota Supreme Court prohibited suits against co-employees if the injured employee elects to receive worker's compensation benefits. A shift in tort liability from the employer to another employee was never intended by the legislature. *Id.* at 48, quoting Minnesota Worker's Compensation Study Commission, *A Report to the Minnesota Legislature and Governor*, 41 (1979). The injury in *Peterson* occurred before the statute was amended, but the decision was written after passage. The court noted that the 1978 amendment made it clear that such actions were barred.

Appellant further claims Whetstone is strictly liable for supplying Nelson with a defective press. It is the employer that supplies the press.

There is no showing that Whetstone breached any personal duty owed to Nelson and therefore there is no basis for liability.

Since all of the alleged breached duties were those of the employer and were nondelegable, plaintiff does not have a proper claim against Whetstone in his role of corporate officer and co-employee. Therefore, Minn.Stat. § 176.061(5)(c) is inapplicable in the context of this case, and we need not reach the issue of its constitutionality.

## DECISION

The summary judgment is affirmed.