Lorene BANOVETZ, Plaintiff,

v.

Betty KING, Defendant and Third–Party Plaintiff,

v.

United States of America, Third–Party Defendant.

No. Civ. 98–956 JRT/RLE.

United States District Court, D. Minnesota.

Aug. 25, 1999.

## ORDER ADOPTING REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

The above-entitled matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson dated August 3, 1999. No objections have been filed to the Report and Recommendation in the time period permitted.

Based upon the Report and Recommendation of the Magistrate Judge, and all of the files, records and proceedings herein,

**IT IS HEREBY ORDERED:**

1. That the Third–Party Defendant's Motion to be Dismissed and to Remand [Docket No. 12] is GRANTED.

2. That this action be remanded to the Minnesota District Court for Hennepin County, and the Clerk of Court is directed to do so forthwith.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

1. Within this District, and within this Circuit, Motions to Remand a State Court proceeding, whose removal is warranted, are recognized as nondispositive Motions which are within the referral jurisdiction of this Court, as provided by Title 28 U.S.C. § 636(b)(1)(A). See, *Dyrda v. Wal–Mart Stores, Inc.,* 41 F.Supp.2d 943, 945 (D.Minn.1999); *Regents of the Univ. of Minnesota v. Glaxo Wellcome, Inc.,* 44 F.Supp.2d 998, 1001 (D.Minn.1999); *Blair v. Source One Mortg. Services Corp.,* 925

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Third–Party Defendant's Motion to Dismiss, and to Remand this action back to the State Court from which it was removed.

A Hearing on the Motion was conducted on November 9, 1998, at which time, the Plaintiff, Lorene Banovetz ("Banovetz"), appeared by Dean M. Salita, Esq.; the Defendant and Third–Party Plaintiff, Betty King ("King"), appeared by Gina M. Stanaway, Esq.; and the Third–Party Defendant, the United States of America, through its Postal Service ("Postal Service"), appeared by Lonnie F. Bryan, Assistant United States Attorney.

For reasons which follow, we recommend[1] that the Motion to Dismiss, and to Remand, be granted.

### II. *Factual and Procedural History*

On or about March 13, 1992, while delivering mail for the Postal Service, Banovetz allegedly slipped on snow and ice, which had accumulated on the sidewalk of the premises located at 6818 Lombardi Avenue, in Crystal, Minnesota, causing her to fall, and to injure herself. The premises were owned by King, who had purchased the home as her personal residence, on February 19, 1992. At the time of the claimed injury to Banovetz, King had not moved into that residence, and did not

F.Supp. 617, 619 n. 1 (D.Minn.1996); *Banbury v. Omnitrition Intern., Inc.,* 818 F.Supp. 276, 279 (D.Minn.1993); *White v. State Farm Mutual Automobile Company,* 153 F.R.D. 639, 642 (D.Neb.1993). Here, the matter was referred to us by the District Court, the Honorable John R. Tunheim presiding, for a recommended disposition, and we adhere to the constraints of that referral. See, *Peterson v. BASF Corp.,* 12 F.Supp.2d 964, 966 n. 1 (D.Minn.1998).

locate herself there until March 19, 1992. See, *Deposition of Betty King* at 6, 9–10. Banovetz brought a State Court action against King, claiming that King was negligent for failing to remove the ice and snow from her sidewalk. See, *Complaint* at ¶¶ 2–3.

Thereafter, King impleaded the Postal Service, alleging that, as Banovetz's employer, it was contributorily negligent for failing to adequately instruct Banovetz on how to perform her job duties in a safe manner; i.e., how to recognize and avoid potentially unsafe conditions, such as accumulated snow and ice. On March 17, 1998, the Postal Service removed this action to Federal Court pursuant to Title 28 U.S.C. § 1441 and, on September 16, 1998, moved the Court to dismiss King's Third–Party Complaint for failing to state a claim upon which relief could be granted, with a resultant need to remand the remaining claims to State Court. See, *Rule 12(b)(6), Federal Rules of Civil Procedure.*

### III. *Discussion*

A. *Standard of Review.* In considering a Motion to Dismiss under Rule 12(b)(6), we accept as true, in a hypothetical sense, all of the factual allegations of the Complaint, and we view those allegations in a light most favorable to the nonmoving party, here King. See, *Riley v. St. Louis County of Missouri*, 153 F.3d 627, 630 (8th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1998); *Springdale Educ. Ass'n v. Springdale School Dist.*, 133 F.3d 649, 651 (8th Cir.1998). Under such an analysis, a Motion to Dismiss, for failing to state a claim, should only be granted if it is beyond doubt than no relief could be granted, under any set of facts, when the allegations are construed in a light most favorable to the pleader. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *County of St. Charles v. Missouri Family Health Council*, 107 F.3d 682, 684 (8th Cir.1997), cert. denied, 522 U.S. 859, 118 S.Ct. 160, 139 L.Ed.2d 105 (1997).

In deferring to the well-pleaded factual allegations, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences. See, *Springdale Educ. Ass'n v. Springdale School Dist.*, supra at 651; *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir.1998); *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3rd Cir.1997); *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1103 (6th Cir. 1995) Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990), citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987).

B. *Legal Analysis.* King premises her claim for contribution against the Postal Service upon its asserted breach of a duty to properly train its workers, and to maintain a safe workplace, as required by regulations promulgated pursuant to the Occupational Safety and Health Act ("OSHA"), *Title 29 U.S.C. § 651 et seq.*, and the Minnesota Occupational Safety and Health Act ("MOSHA"), *Minnesota Statutes Section 182.65 et seq.*, as well as under the precepts of Minnesota common law. Specifically, King alleges that the Postal Service negligently failed to train Banovetz with respect to the hazards posed by snow and ice, thus rendering it liable for the injuries sustained by Banovetz, when she purportedly slipped and fell on King's property. It is King's contention that, under both State and Federal law, training as to the hazards presented by snow and ice conditions was required, since Banovetz was reasonably likely to encounter such hazards in the performance of her employment duties.

The Postal Service counters that neither OSHA, nor MOSHA, has a substantive requirement to train employees concerning

work conditions that are outside of the Postal Service's ability to control—such as those found on King's private property. Consequently, the Postal Service contends that the regulations, which were promulgated pursuant to OSHA and MOSHA, create no duty of care as to the claims asserted by King. Moreover, the Postal Service asserts that, even assuming that the State and Federal OSHA regulations obligated it to train employees regarding obvious hazards—such as snow and ice—King could not legally employ those statutory, and regulatory provisions, in order to impose liability upon it, as she was not a person for whose protection the regulatory measures were promulgated. According to King, however, she can employ these regulations, not for the purpose of redressing an injury to herself, but to establish the Postal Service's contributory negligence as to the injury that is claimed to have been suffered by Banovetz—for whose benefit the protections were clearly intended.

Lastly, King contends that the Postal Service has a nondelegable duty, under Minnesota common law, to provide a safe workplace, which includes the requirement to properly train its employees, so as to reduce the risk of harm that is posed by an unsafe workplace that, King argues, should include her personal premises. The Postal Service rejects this suggestion, and asserts that Minnesota common law does not recognize such a nondelegable duty under the circumstances presented here. We assess the statutory and common law bases for King's contribution claims against the Postal Service, in turn.

1. *Breach of a Duty.* Since King maintains that the Postal Service was negligent in failing to train Banovetz concerning the dangers posed by snow and ice accumulations, we first must determine whether any such duty legally exists.

■ a. *Standard of Review.* The necessary elements of actionable negligence are: "(1) a duty; (2) breach of that duty; (3) a causal connection between the breach and injury; and (4) injury in fact." *John-*

*son v. State,* 553 N.W.2d 40, 49 (Minn. 1996), citing *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). The question of a legal duty is well-suited to exploration at the dispositive Motion stage for, under Minnesota law, whether a legal duty exists is frequently "an issue for the court to determine as a matter of law." *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985); see also, *Johnson v. State,* supra at 49; *Kim v. Ingersoll Rand Company,* 921 F.2d 197, 199 (8th Cir.1990); *Thompson v. Campbell,* 845 F.Supp. 665, 676 (D.Minn.1994).

In the context of a negligence action, a duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Vaughn v. Northwest Airlines, Inc.,* 558 N.W.2d 736, 742 (Minn.1997), quoting *Rasmussen v. Prudential Ins. Co.,* 277 Minn. 266, 152 N.W.2d 359, 362 (1967), quoting in turn, *Prosser, Torts (3d Ed.),* § 53; see also, *Safeco Ins. Co. of America v. Dain Bosworth, Inc.,* 531 N.W.2d 867, 871 (Minn.App.1995), rev. denied (Minn., July 20, 1995). Therefore, "[a]ctionable negligence is a failure to discharge a legal duty to the one injured." *Rasmussen v. Prudential Ins. Co.,* supra at 362. Whether a legal duty exists depends "on the relationship of the parties and the foreseeable risk involved" and, "[u]ltimately, the question is one of policy." *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn.1989); *Vaughn v. Northwest Airlines, Inc.,* supra at 742; *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 421 (Minn.App.1993), rev. denied (Minn., April 20, 1993).

In addition, a legal duty may be imposed upon an individual, or an entity, by operation of statute. See, *Alderman's Inc. v. Shanks,* 536 N.W.2d 4, 7 (Minn.1995). "Regulatory violations may constitute negligence per se if the plaintiff belongs to the class of persons that the regulation is intended to protect." *Femrite v. Abbott Northwestern Hosp.,* 568 N.W.2d 535, 539 (Minn.App.1997) ("[V]iolations of regula-

tions or ordinances that are adopted pursuant to statutory authority can result in negligence per se.", rev. denied (Minn., Nov. 18, 1997)); *Zorgdrager v. State Wide Sales, Inc.*, 489 N.W.2d 281, 284 (Minn. App.1992); *Pacific Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn.1977); see also, *Mervin v. Magney Constr. Co.*, 416 N.W.2d 121, 124 n. 1 (Minn.1987); *Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 897 (Minn.1982). A violation of an OSHA regulation may constitute negligence *per se* if the person, who was harmed by that violation, is within the intended protection of the statute, and the harm suffered is of the type that the legislation was intended to prevent. See, *Zorgdrager v. State Wide Sales, Inc.*, supra at 284.

b. *Legal Analysis.* With these principles in mind, we first assess King's allegation that the Postal Service was negligent in failing to provide a safe workplace, and then we turn to her assertion that the Postal Service failed to properly train Banovetz.

1) *An Employer's Nondelegable Duty to Provide a Safe Workplace.*

■ King argues that the requirements placed upon employers under OSHA, as adopted under MOSHA, form a proper basis upon which the Postal Service may be held contributorily negligent for the injuries claimed by Banovetz, when she was delivering mail to King's home. We disagree, for we find no responsible basis to hold an employer liable for injuries, which were sustained by an employee, when the circumstances that produced those injuries, were outside of the employer's control.

■ a) *Standard of Review.* "Minnesota has adopted the federal OSHA regulations by statute." *Zorgdrager v. State Wide Sales, Inc.*, supra at 284; *Minnesota Statutes Section 182.65, Subdivision 2(f) (1990).* Employers in Minnesota owe a nondelegable duty to provide a safe workplace, and equipment, to their employees. See, *Wood v. Korn*, 503 N.W.2d 523, 525 (Minn.App.1993), rev. denied (Minn., Aug. 24, 1993); *Weber v. Gerads Dev.*, 442 N.W.2d 807, 810–11 (Minn.App.1989), rev. dismissed (Minn., Feb. 7, 1990); *Terveer v. Norling Bros. Silo Co.*, 365 N.W.2d 279, 281 (Minn.App.1985), rev. denied (Minn., May 31, 1985); *Nelson v. Rodgers Hydraulic, Inc.*, 351 N.W.2d 36, 38 (Minn. App.1984). This obligation includes the duty to warn of dangers, and to instruct employees on safety. See, *Nelson v. Rodgers Hydraulic Inc.*, supra at 38; *Berg v. Johnson*, 252 Minn. 397, 90 N.W.2d 918, 921 (1958). An employee's workplace, or place of employment, has been defined by Minnesota statutes to include "any factory, plant, foundry, construction site, farm, workplace, premises, vehicle or any other work environment where any employee is during the course of employment." *Minnesota Statutes Section 182.651, Subdivision 10.*

OSHA only governs duties that are owed by an employer to an employee, and not duties between and an employer and a third-party. See, *Prince v. Thomas*, 25 F.Supp.2d 1045, 1049 (N.D.Cal.1997) (OSHA does not apply to define the duties of care between third-parties and employers). To establish a willful violation of OSHA, the Plaintiff must show that the "act was done with either intentional disregard of, or plain indifference to, the [Occupational and Safety Health] Act's requirements." *St. Joe Minerals Corp. v. OSHRC*, 647 F.2d 840, 846 (8th Cir.1981), citing, *Western Waterproofing Co. v. Marshall*, 576 F.2d 139, 142 (8th Cir.1978), cert. denied, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978).

b) *Legal Analysis.* Our independent research has failed to uncover a case that is precisely on point with the allegations of King's Complaint, and the parties have failed to draw any such decision to our attention. Accordingly, we have looked to the general body of State and Federal law, which addresses the obligation of an employer, in affording a safe work environment to its employees, in analyzing this

aspect of King's claims against the Postal Service.

In each of the Minnesota cases, which hold that an employer owes a nondelegable duty to provide a safe workplace to its employees, the critical element of the Court's decision is the employer's ability to control the conditions of the workplace, such that the duty to maintain safe working condition can be properly, and fairly imposed. In *Wood v. Korn,* supra at 524, which is the only case that King cites for the proposition that the Postal Service owed, and breached, a nondelegable duty to provide Banovetz with a safe workplace—a worker was injured when the press he was operating allegedly malfunctioned, crushing his hand. *Id.* at 524. The operator sued his immediate supervisors, alleging their "failure *** to take any constructive, affirmative action, *** to correct the highly dangerous and deficient nature of [the press], constitut[ed] gross negligence." *Id.* The Court found that the supervisors could not be held grossly negligent for the injuries to Wood, as they did not owe Wood any duty of care to provide a safe workplace and equipment, as that duty belonged to the employer, and was nondelegable. *Id.* at 525. We have no disagreement with that holding, but find that the decision is inapposite since it arises from a circumstance in which the employer was capable of controlling the hazards in the workplace.

As noted, the common component of those cases, which have determined that an employer must provide a safe workplace and equipment to its employees, is the fact that employer was able to exercise control over the working conditions of its employees. See, e.g., *Sutherland v. Barton,* 570 N.W.2d 1 (Minn.1997) (applying Restatement (Second) of Torts § 414, as implicitly adopted in *Conover v. Northern States Power Co.,* 313 N.W.2d 397, 401 (Minn.1981)); *Weber v. Gerads Dev.,* supra at 810–11; *Terveer v. Norling Bros. Silo Co.,* supra at 281; *Nelson v. Rodgers Hydraulic, Inc.,* supra at 38; *Dawley v. Thisius,* 304 Minn. 453, 231 N.W.2d 555, 556 (1975). Absent from the facts alleged in

King's Third–Party Complaint is any assertion that the Postal Service exercised control over the conditions to which Banovetz was exposed on King's premises, or that the Postal Service required Banovetz to accept the dangers presented on King's property, over Banovetz's objection.

 In those cases in which the employer did not retain control over the conditions of the worksite, the Courts have applied a distinctly different set of criteria to consider the liability of an employer for the injuries sustained by its employee in that workplace. Generally, these principles have arisen in the context of multi-employer worksites. In cases under OSHA, the Federal Occupational Safety and Health Review Commission ("OSHRC"), and the State and Federal Courts, have recognized two situations in which an employer, on a multi-employer worksite, may properly be cited for occupational safety and health violations that do not result from an exposure of the employer's own workers to a hazard. "In the first situation, an employer may be responsible for a Federal OSHA violation if the employer creates or controls the hazard." *Bastian v. Carlton County Highway Dep't,* 555 N.W.2d 312, 316 (Minn.App.1997), rev. denied (Minn., Jan. 7, 1997), citing *Red Lobster Inns,* 1980 O.S.H.Dec. (CCH) ¶ 24,636, at 30,220 (Rev. Comm'n, July 18, 1980); see also, *IBP, Inc. v. Herman,* 144 F.3d 861, 866 (D.C.Cir.1998). "Under the second scenario, an employer may be responsible for [OSHA] violations of other employers when it could reasonably be expected to have prevented or abated the violations due to its supervisory authority and control over the work site." *Id.*

Indeed, employers have been held liable for OSHA violations based upon a presumption that, as general contractors, they ordinarily have the responsibility, and the means, to ensure that subcontractors on the same worksite comply with any occupation safety and health regulations that may apply. *Id.,* citing *Marshall v. Knut-*

*son,* 566 F.2d 596, 599 (8th Cir.1977); *Gil Haugan,* 1979 O.S.H.Dec. (CCH) ¶ 24,105, at 29,290 (Rev.Comm'n, Dec. 20, 1979). In the multi-employer setting, "the hiring employer does not always have control over the worksite in an independent contractor situation."[2] *Arizona Pub. Serv. Co. v. Indust. Comm'n,* 178 Ariz. 341, 873 P.2d 679, 682 (App.1994).

Of course, we recognize that the considerations to be applied, when an employee is injured on a multi-employer worksite, are not precisely identical to those presented where, as here, an employee is injured while in the scope of her employment responsibilities on private premises. In the absence of apposite authority, however, we must look to the guiding principles established in analogous, though not identical contexts. On that basis, we conclude that an employer's ability to control the worksite is so essential to the imposition of liability on that employer, which arises from that employer's nondelegable duty to provide a safe workplace, that there are obvious parallels when someone other than another employer controls the premises. Here, we have no difficulty in applying that same rationale to King who, while not an employer in a multi-employer workplace, unquestionably had complete authority to remove any and all hazards from the place where Banovetz was assertedly hurt.

King presents no authority which would so much as suggest that an employer's nondelegable duty to provide a safe workplace has been applied, or should be applied, to situations, such as those presented here, in which the employer is without authority to control the conditions at the worksite. This does not surprise us, since

MOSHA, like its Federal counterpart, was enacted to "assure so far as possible every worker *** safe and healthful working conditions and to preserve our human resources by [establishing standards of occupational safety and health] ***." *Minnesota Statutes Section 182.65, Subdivision 2.* There is no public interest to be served, however, by holding employers liable for workplaces over which they have no governance. Here, the Postal Service would have no authority to enter King's premises and either remove the purported hazards, or modify the conditions of her property so as to assure that such hazards would not present themselves.

■ In truth, the risk presented, which is claimed to have caused Banovetz's injury, was created by King, and was an unavoidable consequence of a Winter in Minnesota. We have no reason to find, and common sense rebuffs, a legal obligation on the part of the Postal Service to preview every location, to which its postal carriers are introduced, in order to preclude their exposure to accumulated ice, and snow, during the entirety of a Minnesota Winter.[3] To impose that obligation, as a matter of law, would be nothing short of commanding the accomplishment of a physical impossibility. Indeed, to comply with such a duty, were one found to exist, the Postal Service would be obligated to expose another employee to the very same danger, and risk of injury, to which Banovetz was exposed. We do not believe that legal duties are properly imposed in order to accomplish the impossible, or the absurd. To hold otherwise, would place the Postal Service in the untenable position as an absolute insurer of those, such as King,

**2.** Similarly, the Restatement (Second) of Torts § 414 imposes liability on an employer of an independent contractor who retains control of any part of the work, under the following rationale:

> The employer must have retained at least some degree of control over the manner in which the work is done ***. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Restatement (Second) of Torts § 414, Comment c, at 388 (1965).*

**3.** We have no reason to here consider the prospect of employer liability where the employee calls attention to a perceived risk, and the employer directs the employee to endure the risk with resultant injury, for King has not pled such a claim.

who would seek to impute their own potential for liability upon the Postal Service. In sum, we find that the Postal Service had no legal duty to provide Banovetz with a safe working environment, under the circumstances pled by King, so as to legally allow King's Third–Party claim for contribution or indemnity.

### 2) *An Employer's Duty To Train.*

In contrast to her arguments concerning the Postal Service's duty to provide a safe workplace, King's contention, that the Postal Service had a duty to train Banovetz, about hazards she was reasonably likely to encounter in the course of her job duties, is a more plausible, but ultimately unpersuasive one, under both the statutory, and common law bases that King urges.

### a) *The Duty to Train under State and Federal OSHA.*

Minnesota Statutes Section 182.673 provides as follows:

> The commissioner shall promulgate rules for the establishment of programs for the education of employers and employees in the recognition, avoidance and prevention of unsafe or unhealthful working conditions in places of employment covered by this chapter, and consult with and advise employers and employees, and organizations representing employers and employees, as to effective means of preventing occupational injuries and illness.

By comparison, the Federal OSHA regulations require, *inter alia,* that:

> (1) The employer should avail himself of the safety and health training programs the Secretary provides; [and]
> (2) The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury.

*29 C.F.R. § 1926.21(b)(1–2).*

Notwithstanding OSHA's directive to train employees "in the recognition and avoidance of unsafe conditions," the Postal Service contends that there is no substantive regulation, under which it is obligated to provide training as to known and obvious hazards. In this respect, the Postal Service argues that, "[a]bsent such a safety standard, OSHA itself does not hold the employer responsible." See, *Third Party Defendant's Reply Memorandum* at 3. We reject the Postal Service's argument, in this respect, as disconsonant with the prevailing case law, for an employer's duty to train need not arise under a specific mandate, but is fashioned to require a flexible duty to warn against significant hazards.

Section 654(a)(1) of OSHA provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." *Title 29 U.S.C. § 654(a)(1).* This clause is commonly referred to as the "general duty" clause. Although the general duty clause does not impose absolute liability on an employer for all unsafe conditions, it does require the employer to take all feasible steps to abate, or prevent, a condition that employers in that industry would recognize as being hazardous. See, *Donovan v. Missouri Farmers Assoc.,* 674 F.2d 690, 692 (8th Cir.1982); *Baroid Div. of NL Indust., Inc. v. OSHRC,* 660 F.2d 439, 444 (10th Cir.1981); *Champlin Petroleum Co. v. OSHRC,* 593 F.2d 637 (5th Cir.1979); *Getty Oil Co. v. OSHRC,* 530 F.2d 1143 (5th Cir.1976); *United States v. B & L Supply Co.,* 486 F.Supp. 26 (N.D.Tex.1980). "To establish a violation of the general duty clause, the Secretary must prove (1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.' " *St. Joe Minerals Corp. v. OSHRC,* 647 F.2d 840, 844 (8th Cir.1981); *Baroid Div. of NL Indust., Inc. v. OSHRC,* supra at 444; *Whirlpool Corp. v. OSHRC,* 645 F.2d 1096 (D.C.Cir.1981); *Titanium Metals Corp. v. Usery,* 579 F.2d 536 (9th Cir.1978); *Em-*

pire–Detroit Steel Div. v. OSHRC, 579 F.2d 378 (6th Cir.1978); I.T.O. Corp. v. OSHRC, 540 F.2d 543 (1st Cir.1976); National Realty & Constr. Co. v. OSHRC, 489 F.2d 1257 (D.C.Cir.1973).

Of course, in addition to an employer's potential liability, under the general duty clause, an employer also can be liable, under OSHA, if it violates an established occupational safety and health standard— that is, the employer breaches the "specific duty" clause, Title 29 U.S.C. § 654(a)(2). Section 654(a)(2) specifies that each employer "shall comply with occupations' specific safety and health standards promulgated under [OSHA]." As such, the Postal Service is plainly wrong in contending that only specific safety and health standards, which were promulgated pursuant to OSHA, can properly form the basis for an OSHA violation.

As we understand her limited argument in opposition to this aspect of the Postal Service's Motion, King asserts that the Postal Service did have a "specific" duty, under OSHA, to provide training as to the hazards posed by snow and ice accumulations. Notably, her argument lacks any reference to a standard, promulgated under OSHA, or MOSHA, that imposes such an obligation on an employer, nor has our independent research uncovered one. Accordingly, our focus turns to any purported violation, by the Postal Service, of the general duty proviso.

■ Here again, King proffers no statutory or common law substantiation for her contention that the Postal Service owed a "general" duty of care, pursuant to Section 654(a)(2) of OSHA, to provide Ba-

novetz with training on known and obvious hazards, such as the risks presented by accumulations of snow and ice.[4] Instead, King presents the Affidavit of her safety expert, Ivan W. Russell ("Russell"), for the proposition that such a duty is, or should be, owed to Banovetz. Of course, in considering a Motion to Dismiss, the Court is confined to the legal sufficiency of the challenged claims, as presented by the allegations of King's Third–Party Complaint, and as considered under the prism supplied by the applicable statutory and common law. As such, the opinions of Russell may not properly be offered to stave a dismissal that is otherwise required as a matter of law. Since King has relied almost exclusively upon the views of Russell, in opposing the Postal Service's Motion, and given the absence of authority which would impute liability to the Postal Service, under the circumstances presented here, we conclude that the Postal Service owed no statutory or common law duty to train Banovetz regarding the dangers of snow and ice.

In reaching our decision, we are particularly concerned with the potential expansion of employer liability, that is foreshadowed by King's requested creation of an employer duty to train workers concerning the hazards of snow and ice. Were the Court to fashion an employer's duty to train, so as to envelope hazards that are common to the life's ordinary experiences, we can envision no limit to expansion of such liability, not to mention the anticipated expansion of employee training manuals, so as to faithfully address all of the potentialities of danger, from every con-

---

4. King cites three cases to support her contention that a general duty to train, and supervise, applies to the circumstances of this case. Each case, however, imposes a duty to train employees regarding the specific, substantive standards that have been promulgated under the State and Federal OSHA. See, Valdak Corp. v. OSHRC, 73 F.3d 1466 (8th Cir.1996) (affirming a citation for a willful violation of a machine guard requirement under 29 C.F.R. § 1910.212(a)(4)); Zorgdrager v. State Wide Sales, Inc., 489 N.W.2d 281 (Minn. App.1992) (citing owner of trucking company for unsafe workplace where he failed to provide sufficient numbers of wheel chocks as required by OSHA); Danco Constr. Co. v. OSHRC, 586 F.2d 1243 (8th Cir.1978) (holding employer liable for violating ten foot clearance between crane and electric power lines requirement of 29 C.F.R. § 1926.550(a)(15)). These cases do not, therefore, support King's assertion that an employer's duty to train exists in the absence of a substantive regulation, or statute, concerning the cited violation.

ceivable source, that could be encountered by an employee. We find nothing in the State and Federal OSHA provisions, which contemplate such a broad imposition of potential employee liability for hazards that are not of the employer's making.

■■■ Nor is there support for such a duty in the applicable case law. In decision after decision, Courts have consistently refused to extend a duty to warn against hazards when the hazards are common and obvious. See, e.g., *Rausch v. Julius B. Nelson and Sons, Inc.*, 276 Minn. 12, 149 N.W.2d 1, 7 (1967) (employer's obligation to warn employee was superfluous because the fact that stacked objects can fall was as obvious to decedent as it was to anyone else); *Hacker v. Berkner*, 263 Minn. 278, 117 N.W.2d 13, 18 (1962) (holding that a servant assumes the extraordinary risks incident to his employment as he may knowingly and voluntarily encounter, provided they are known or plainly observable by ordinary observation); *Parness v. Economics Lab., Inc.*, 284 Minn. 381, 170 N.W.2d 554, (1969) (finding that, where café employee knew that water on café floor was soapy and realized that there was a danger of slipping but, nevertheless, attempted to cross the floor without holding on to kitchen equipment or coworker's arm, employee assumed the risk injury); *Geis v. Hodgman*, 255 Minn. 1, 95 N.W.2d 311, 314 (1959) (in personal injury action by servant against master not covered by compensation acts or statutes imposing a duty on the employer for benefit of the employee, the common law still governs, and the defense of assumption of risk is available to the employer). "It is the general rule that a person engaging in any employment assumes the obvious risks ordinarily incident to it." *Hacker v. Berkner*, supra at 18. The purpose of any duty to warn is to enable the person to take steps to protect him- or herself. Where the hazard is obvious to the average person, such a warning serves little purpose.

Again, we do not suggest that each of these decisions is perfectly apposite, but they generally guide our analysis from a pertinent, analogous context, in the absence of applicable precedent. We are aware of no requirement, under the governing common law, or otherwise, that would require an employer to train its employees to look both ways before crossing a busy intersection, to assure that his or her shoelaces are tied, to wear his or her prescriptive lenses, or to watch for obvious or recognized hazards. If we were to hypothesize that Banovetz's claimed injury was sustained because she was not maintaining a proper lookout, and had misstepped into a hole excavated on King's sidewalk, we do not understand how such a misfortune would, properly, be the product of her employer's failure to train. The claimed cause of Banovetz's injury, here, is not meaningfully distinguishable from a failure to keep a lookout, to cross a roadway against the signals, to refuse to wear corrective lenses, or to properly tie one's shoe laces. Such personal negligence, if any there be, is not legally ascribable to an employer's failure to warn about the ordinary incidents of life. Legal duties are the product of an insistent social need—the "felt necessities of the time"—and not some understandable, self-interest in seeking to distribute one's own potential for liability. See, Holmes, O.W., *The Common Law* (Little, Brown & Co., 1881) at p. 1.

■■■ King argues, in the alternative, that, even if such a duty did not exist by application of statute, the Postal Service owed a common law "special duty" to train Banovetz. The special duty doctrine is nothing more than convenient terminology for the doctrine which requires that, "once a duty to act for the protection of others is voluntarily assumed, due care must be exercised even though there was no duty to act in the first instance." *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn.1979). As expressed by King, because the Postal Service endeavored to warn its employees about certain potential hazards, which may be inherent in the performance of their duties, it assumed a duty to warn them about all potential haz-

ards, including the hazards posed by snow and ice.

Under Minnesota law, however, to establish a special duty, the preponderance of four factors must be met. *Id.* The *Cracraft* factors include: (1) actual knowledge of the dangerous condition by the individual charged with the duty; (2) reasonable reliance on specific representations of the obligated party; (3) a statutory duty to protect a particular class of persons; and (4) action, on the part of the party charged with the duty, must increase the risk of harm to a person within the class protected under the statute. *Id.* at 807; see also, *Andrade v. Ellefson,* 391 N.W.2d 836, 841 (Minn.1986). Applying the *Cracraft* factors here, it should be plainly evident that the mere act of undertaking to train employees, regarding some potential hazards, should not impose a duty to train the same employees as to all conceivable, potential hazards. We address each of the *Cracraft* factors, in turn.

First, actual knowledge of a dangerous condition tends to impose a special duty to do something about that condition. It is actual knowledge, not mere constructive knowledge, that is required to impose a special duty upon an individual. *Andrade v. Ellefson,* supra at 841, citing *Hage v. Stade,* 304 N.W.2d 283, 288 n. 2. (Minn.1981). Constructive knowledge of a dangerous condition does not create a special relation to the injured person, that is sufficient to impose a special duty to prevent an injury. *Id.* Here, there is no allegation, contained in King's Third–Party Complaint, that the Postal Service was, at any time prior to the injuries claimed by Banovetz, actually aware of the icy conditions that existed on King's property. Second, King has not alleged that the Postal Service made any representation to Banovetz, concerning the conditions that she found on King's property, that can responsibly be seen as having established a special duty of care as to those conditions.

Next, as we have already noted, while there is a statutory duty to provide a safe workplace for one's employees, we find no legitimate basis to extend that obligation to circumstances wholly outside of the employer's control. Nor do we find any authority which requires the employer to train its employees about conditions which, while posing some potential hazard, are the incidents of ordinary life. Lastly, we find nothing about the Postal Service's lack of training—if any there be—specific to snow and ice, that would render the hazards or ice and snow inherently more or less dangerous than they would otherwise be. We seriously doubt that any instruction as to the dangers of snow and ice would educate the listener more tellingly than the common experience, of persons in these environs, of having slipped, on countless occasions, on an icy surface. The fault for the injuries that Banovetz claims are properly allocated to King and Banovetz, as the evidence may prove, but we find no responsible basis to hold the Postal Service accountable for any injuries that Banovetz may have sustained. As a result, we recommend that the Postal Service's Motion to Dismiss be granted.

C. *Pendent State Law Claims.* Title 28 U.S.C. § 1367(a) provides that District Courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Where, as here, all of the claims which fall within our original jurisdiction have been dismissed, the Court may decline to exercise supplemental jurisdiction over pendent state law claims. *Title 28 U.S.C. § 1367(c).*

In deciding whether to exercise supplemental jurisdiction, after we have dismissed the only claims arising under our original jurisdiction, we are obliged to consider "the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Minnesota Ass'n of Nurse Anes-*

*thetists v. Unity Hosp.,* 5 F.Supp.2d 694, 711 (D.Minn.1998), citing *Marshall v. Green Giant Co.,* 942 F.2d 539, 549 (8th Cir.1990). Courts should "exercise judicial restraint and avoid state law issues wherever possible." *Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990). Ordinarily, " 'where all federal law claims are eliminated before trial, the balance of factors to be considered' will weigh against the exercise of supplemental jurisdiction." *Edwards v. Widnall,* 17 F.Supp.2d 1038, 1043 (D.Minn.1998), quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

None of the pertinent factors persuade us to retain jurisdiction over the Plaintiff's pendent State law claims. Removal of this action was premised upon Title 28 U.S.C. § 1346, which grants the Federal Courts original and exclusive jurisdiction over civil actions involving claims against the United States, for money damages or personal injury, due to the negligence, or wrongful act or omission, of Government employees. Since we are recommending that the Postal Service be dismissed from this action, our original jurisdiction ceases at that point.

In the absence of the United States as a party, we find that the considerations dictated by Title 28 U.S.C. § 1367 militate against our retention of supplemental jurisdiction over the Plaintiff's State law claims. First, the litigation is still comparatively undeveloped. Although the remaining claims are not in areas of unsettled State law, judicial restraint counsels against resolving them where it appears that little of the parties', or the Court's, resources have already been devoted to their merits. Lastly, as neither of the remaining parties have objected to the Postal Service's Motion to Remand, we conclude that they are favorably disposed to the return of this case to State Court. Therefore, pursuant to Section 1367(c), we recommend that the Plaintiff's State law claims be remanded to State Court.

NOW, THEREFORE, It is—

RECOMMENDED:

1. That the Third–Party Defendant's Motion to be Dismissed and to Remand [Docket No. 12] is GRANTED.

2. That this action be remanded to the Minnesota District Court for Hennepin County, and the Clerk of Court is directed to do so forthwith.

August 3, 1999.